842 A.2d 743

**Joseph MELTON**

v.

**STATE of Maryland.**

**No. 61, Sept. Term, 2003.**

Court of Appeals of Maryland.

Feb. 12, 2004.

Julia Doyle Bernhardt, Assistant Public Defender (Stephen E. Harris, Public Defender, of Baltimore), on brief, for petitioner.

Gary E. Bair, Solicitor General (J. Joseph Curran, Jr., Attorney General of Maryland, of Baltimore, on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (retired, specially assigned), JJ.

CATHELL, Judge.

On October 4, 2001, petitioner was tried in the Circuit Court for Baltimore County and convicted, in a bench trial, of the unlawful possession of a firearm by a person previously convicted of a crime of violence, the unlawful possession of a firearm by a person previously convicted of a felony, and the unlawful possession of a firearm by a person previously convicted of a misdemeanor with a penalty of over two years of incarceration. On December 14, 2001, petitioner was sentenced to five years of incarceration without parole for the conviction based on the unlawful possession of a firearm by a person previously convicted of a crime of violence and to a concurrent sentence of five years of incarceration without parole for the conviction based on the unlawful possession of a firearm by a person previously convicted of a felony. The trial judge suspended the sentence "generally" for the conviction for unlawful possession of a firearm by a person previously convicted of a misdemeanor with a penalty of over two years of incarceration.

Petitioner filed an appeal to the Court of Special Appeals. On June 3, 2003, in an unreported opinion, the Court of Special Appeals affirmed the trial judge's decision. The Court of Special Appeals held that:

"separate criminal offenses have been committed. For each offense, the Legislature has provided a separate punishment. Moreover, the Legislature has not indicated in any

way that it intended to prohibit the imposition of separate sentences for the crimes at issue. For these reasons, the rule of lenity does not require a merger of the separate offenses proscribed by Article 27, §§ 445(d)(1)(i) and (ii)." [Footnote omitted.]

Petitioner then filed a Petition for Writ of Certiorari to this Court and on September 10, 2003, this Court granted the petition. *Melton v. State,* 377 Md. 111, 832 A.2d 204 (2003). In his brief, petitioner presents one question for our review:

"Under Md. Ann Code, Art. 27, § 449(e), may a court impose separate sentences on an individual who has been convicted under a count alleging a violation of § 445(d)(1)(i) (unlawful possession of a regulated firearm by a person with a prior conviction of a crime of violence), a count alleging a violation of § 445(d)(1)(ii) (unlawful possession of a regulated firearm by a person with a prior conviction of a felony), and a count alleging a violation of § 445(d)(1)(iii) (unlawful possession of a regulated firearm by a person with a prior conviction of a misdemeanor with a statutory penalty of more than two years), where all of the charges are based on one act of unlawful possession of a regulated firearm?"

We answer petitioner's question in the negative and hold that the Legislature did not intend for a court to render separate multiple verdicts of convictions on an individual for illegal possession of a regulated firearm pursuant to Md.Code (1957, 1996 Repl.Vol.2001 Supp.), Art. 27 § 445(d)(1)(i), (ii) and (iii) and § 449(e) and (f) where that individual fits within several categories of prior qualifying convictions, but only possessed a single regulated firearm on a single occasion. Further, an interpretation to the contrary would be barred by the rule of lenity.

## I. Facts

Petitioner's convictions arose out of a January 2001 incident involving a dispute between neighbors in an apartment building in the Essex area of Baltimore County, Maryland. Around 6:30 p.m. on the evening of January 23, 2001, two sets of neighbors arrived in the parking lot of their apartment

complex at approximately the same time. Pursuant to the testimony of the first couple, Shikera Bibb and her fiancee, Duane David, the two had a confrontation with petitioner and his wife after Ms. Bibb and Mr. David approached the Meltons. Mr. David asked to speak to petitioner and petitioner's wife sprayed both Ms. Bibb and Mr. David in the face with mace.[1] Mr. David then threatened reprisal against petitioner's wife. Ms. Bibb and Mr. David testified that petitioner pulled out a gun and pointed it at them in response to Mr. David's actions.[2] While pointing the gun back and forth at Ms. Bibb and Mr. David, petitioner told them that they were not going to touch his wife.

Ms. Bibb and Mr. David then walked away from the Meltons and entered their apartment building. Soon thereafter, they again encountered the Meltons and another heated argument ensued. Ms. Bibb and Mr. David testified that petitioner again displayed a handgun before the confrontation ended.

At trial, the State presented certified copies of petitioner's prior convictions, including his convictions for possession of marijuana with intent to distribute, possession of controlled dangerous substances (not marijuana), second degree assault and resisting arrest. While testifying in his own defense, petitioner admitted to a prior conviction for felony theft. The State also presented evidence that the handgun brandished by petitioner during the January 23rd incident with his neighbors was a regulated firearm.

As a result of this incident,[3] petitioner was charged with three separate violations of Md.Code (1957, 1996 Repl.Vol.,

---

1. According to petitioner and his wife, Mr. David's approach was viewed as an assault and therefore Mrs. Melton's use of mace was in self-defense.

2. Both petitioner and his wife denied the assertion that petitioner had possessed or displayed a firearm during the incident on January 23, 2001.

3. At the trial level, the events of January 23, 2001 were treated as a single incident, *i.e.*, a single act of possession.

2001 Supp.), Art. 27 § 445(d)(1)(i), (ii) and (iii),[4] because he possessed a firearm and: 1–had been previously convicted of a crime of violence (second degree assault); 2–had been previously convicted of a violation classified as a felony (felony convictions for possession of controlled dangerous substances and a felony theft conviction); and 3–had been previously convicted of a violation classified as a misdemeanor that carries a penalty of more than 2 years (second degree assault). Although his possession of the firearm on January 23rd was treated as a single act of possession, petitioner was nonetheless charged with three separate criminal offenses solely because of his prior history of convictions. Petitioner was convicted on all three charges. As mentioned previously, the trial judge sentenced petitioner to five years of incarceration on the (d)(i) count and a concurrent five years of incarceration for the (d)(ii) count, while his sentence for the (d)(iii) conviction was suspended generally.

## II.  Discussion

### A.  Standard of Review

The three counts relating to the illegal possession of a firearm by a prohibited person pursuant to which petitioner was convicted are crimes that are purely statutory in nature. In interpreting statutes, this Court has said that "the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Holbrook v. State*, 364 Md. 354, 364, 772 A.2d 1240, 1245–46 (2001) (quoting *In re Anthony R.*, 362 Md. 51, 57, 763 A.2d 136, 139 (2000) (internal citation omitted)). A court should first examine the plain language of the statute when attempting to ascertain the

---

4. Hereinafter, except where indicated otherwise, all statutory references are to Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, which was the applicable law at the time of petitioner's trial and sentencing. Article 27, however, has since been repealed and recodified. Much of the former Article 27 currently can be found in the Criminal Law Article of the Maryland Code (2002, 2003 Supp.). The specific provisions relating to the illegal possession of firearms by prohibited persons, however, are located in Title 5 of the Public Safety Article of the Maryland Code (2003), discussed *infra*.

legislative intent. *Holbrook,* 364 Md. at 364, 772 A.2d at 1246; *In re Anthony R.,* 362 Md. at 57, 763 A.2d at 139. If the statutory language is unambiguous when construed according to its ordinary and everyday meaning, then this Court "will give effect to the statute as it is written," *Pak v. Hoang,* 378 Md. 315, 323, 835 A.2d 1185, 1189 (2003) (quoting *Moore v. Miley,* 372 Md. 663, 677, 814 A.2d 557, 566 (2003) (quoting *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994))), and we will not add or delete words from the statute, *Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426, 427 (2002).

Only if the statutory language is ambiguous will this Court look "beyond the statute's plain language in discerning the legislative intent." *Comptroller of the Treasury v. Clyde's of Chevy Chase, Inc.,* 377 Md. 471, 483, 833 A.2d 1014, 1021 (2003). We have said that ambiguity exists within a statute when there are "two or more reasonable alternative interpretations of the statute." *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003). Once a statutory provision is found to be ambiguous, then we may look to other relevant factors that may reveal the statute's intent or general purpose, such as "a bill's title and function paragraphs, amendments . . . and other material that fairly bears on the fundamental issue of legislative purpose or goal." *Clyde's,* 377 Md. at 483, 833 A.2d at 1021 (quoting *Moore,* 372 Md. at 677, 814 A.2d at 566 (quoting *In re Anthony R.,* 362 Md. at 58, 763 A.2d at 140 (internal citation omitted))). Any "[c]onstruction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided." *Degren v. State,* 352 Md. 400, 417, 722 A.2d 887, 895 (1999) (alteration added) (quoting *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992))); *see also Moore,* 372 Md. at 677–78, 814 A.2d at 566.

In the case *sub judice,* the language of § 445(d)(1) appears clear and unambiguous on its face. It is a mere enumeration of the classifications of persons prohibited from possessing regulated firearms in Maryland. Petitioner does not now dispute the fact that he was in violation of § 445(d)(1) because of his previous convictions coupled with his being found guilty

of possession of a single firearm during the January 23, 2001 incident. Petitioner does, however, challenge his *multiple* convictions under § 445(d)(1)(i), (ii) and (iii) of the statute. The question is thus whether the language of § 449(e) and (f), the subsections instituting penalties for petitioner's three convictions under § 445(d)(1)(i), (ii) and (iii), stating that "Each violation shall be considered a separate offense," allows for multiple convictions based not on multiple firearm possessions or multiple incidents of firearm possession, but solely on petitioner's single firearm possession with several prior qualifying convictions under § 445(d)(1).

This essential issue turns on which unit of prosecution the Legislature intended for § 449(e) to trigger its mandatory minimum sentences: the number of separate acts of illegal firearm possession or the number of convictions of prior qualifying crimes. Although it included the language mandating that "Each violation shall be considered a separate offense," the Legislature failed to define the term "violation" for the purposes of this statute. Simply put, no explanation of the intended unit of prosecution was put forth by the General Assembly. Thus, we must decide whether "Each violation" occurs only on every separate illegal act of possession or whether "Each violation" occurs where there is a single possession coupled with several qualifying prior convictions.

This Court applies our normal rules of statutory construction in determining the legislative intent regarding the proper unit of prosecution and the appropriate unit of punishment in respect to violations of any criminal statute. In *Huffman v. State*, 356 Md. 622, 627–28, 741 A.2d 1088, 1091 (1999), we stated:

"In determining the appropriate unit of punishment for violations of statutory provisions, the central question is one of legislative intent. *Randall Book Corp. v. State*, 316 Md. 315, 324, 558 A.2d 715, 720 (1989). We have explained that 'whether a particular course of conduct constitutes one or more violations of a single statutory offense depends upon the appropriate unit of prosecution of the offense and this is

ordinarily determined by reference to the legislative intent.' *Richmond v. State,* 326 Md. 257, 261, 604 A.2d 483, 485 (1992); *Brown v. State,* 311 Md. 426, 432, 535 A.2d 485, 488 (1988). Every quest to discover and give effect to the objectives of the legislature begins with the text of the statute. *In re Victor B.,* 336 Md. 85, 94, 646 A.2d 1012, 1016 (1994). If the intent of the legislature is clear from the words of the statute, our inquiry normally ends and we apply the plain meaning of the statute. *State v. Montgomery,* 334 Md. 20, 24, 637 A.2d 1193, 1195 (1994). In other words, we will approach our analysis from a common sense perspective, seeking to give the statutory language its ordinary meaning. *See United States v. Universal Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260, 264 (1952). In furthering the identified legislative objectives, we avoid giving the statute a strained interpretation or one that reaches an absurd result. *Briggs v. State,* 348 Md. 470, 477, 704 A.2d 904, 908 (1998)."

*See also Bane v. State,* 327 Md. 305, 308, 609 A.2d 313, 314 (1992) (stating that a question of the proper unit of prosecution exists where "multiple sentences for conduct proscribed by a single statute, which, though occurring in a single transaction, gives rise to multiple prosecutions").

### B. Felony and Crimes of Violence Qualifiers

The offenses of which petitioner was convicted were located, at the time of petitioner's conduct and trial, within the "Regulated Firearms" subheading of Article 27 of the Maryland Code. Section 445(d), which specifically enumerates the persons prohibited from possessing regulated firearms under Article 27, stated: [5]

### " § 445.   Restrictions on sale, transfer and possession of regulated firearms.
\* \* \*

---

**5.** This section now appears in Md.Code (2003), § 5–101(g) and § 5–133 of the Public Safety Article, discussed *infra.*

(d) *Restrictions on possession—In general.*—A person may not possess a regulated firearm if the person:

(1) Has been convicted of:

(i) A crime of violence;

(ii) Any violation classified as a felony in this State;

(iii) Any violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years; or

(iv) Any violation classified as a common law offense where the person received a term of imprisonment of more than 2 years.

(2) Is:

(i) A fugitive from justice;

(ii) A habitual drunkard;

(iii) Addicted to or a habitual user of any controlled dangerous substances;

(iv) Suffering from a mental disorder as defined in § 10–101(f)(2) of the Health–General Article and has a history of violent behavior against another person or self, or has been confined for more than 30 consecutive days to a facility as defined in § 10–101 of the Health–General Article, unless the person possess a physician's certification that the person is capable of possessing a regulated firearm without undue danger to the person or to others; or

(v) A respondent against whom a current non ex parte civil protective order has been entered under § 4–506 of the Family Law Article.

(3) Is less than 30 years of age at the time of possession and has been adjudicated delinquent by a juvenile court for committing:

(i) A crime of violence;

(ii) Any violation classified as a felony in this State; or

(iii) Any violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years."

The felony/misdemeanor classification and subsequent penalties for violations involving regulated firearms under § 445

are found in § 449. The mandatory minimum provision providing penalties for violations of § 445(d)(1)(i) and (ii) was first enacted by Chapter 2 of the Laws of Maryland of 2000 and it states:

" § 449. **Penalties.**

* * *

(e) *Illegal possession of firearm with certain previous convictions.*—A person who was previously convicted of a crime of violence as defined in § 441(e) of this article or convicted of a violation of § 286 or § 286A of this article, and who is in illegal possession of a firearm as defined in § 445(d)(1)(i) and (ii) of this article, is guilty of a felony and upon conviction shall be imprisoned for not less than 5 years, no part of which may be suspended and the person may not be eligible for parole. Each violation shall be considered a separate offense."

The outcome in the case *sub judice* rests upon the interpretation of the last sentence of § 449(e). The Legislature did not provide any definition for the term "violation." The insertion of that language, however clear on its face, without definition, creates an ambiguity as the sentence, as written, is "reasonably capable of more than one meaning." *Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998) (quoting *Greco v. State,* 347 Md. 423, 429, 701 A.2d 419, 421 (1997)).

Petitioner argues that this Court should determine that the proper unit of prosecution is not "an individual's [qualifying] prior convictions (or each [qualifying] class of which [petitioner] is a member)," but "each unlawful act of possession" (alterations added).[6] Petitioner contends that common sense

---

6. The State contends that petitioner's "unit of prosecution" argument is untimely because it did not specifically appear in the Petition for Certiorari, nor was it discussed at the Court of Special Appeals. A unit of prosecution argument, however, is inextricably intertwined with a determination of whether the Legislature intended § 449(e) and (f) and § 445(d)(1) to allow for prosecutions based on a single possession of a firearm. As the question presented to this Court asked whether a court could "impose separate sentences on an individual" convicted on three

precludes multiple convictions based solely on the number of prior convictions where only one act of possession of an illegal firearm occurred. He argues that § 449 is ambiguous as a result of not defining the term "violation" and that the rule of lenity requires the ambiguity to be construed in favor of petitioner.

The State counters petitioner's arguments by asserting that the statutory language of § 445(d)(1) and § 449 is "plain and unambiguous," thus precluding the applicability of the rule of lenity. The State also proffers that the legislative history of the statute "indicates that separate sentences are permissible." The State argues that this is so "because of the strong intent manifested in the legislative history making it apparent that the conduct here was to be dealt with as severely as possible."

## C. Misdemeanor Qualifier

Petitioner's conviction under § 445(d)(1)(iii), for possession of a firearm with a prior "violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years," subjected him to the penalty stated in § 449(f), which provides for a penalty for illegal possession of a regulated firearm for persons not fitting into the other categories of § 449, as it does not fall into the purview of § 449(e). Section 449(f) states:

"(f) *Knowing participants in sale, rental, etc.*—Except as otherwise provided in this section, any dealer or person who knowingly participates in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subheading shall be guilty of a misdemeanor and upon conviction shall be fined not more than $10,000 or imprisoned for not more than 5 years, or both. Each violation shall be considered a separate offense."

---

counts of § 445(d)(1), "where all of the charges are based on one act of unlawful possession of a regulated firearm," determining the specific unit of prosecution (the number of qualifying offenses or the act of possession) is necessary in a determination of legislative intent. *See Jenkins v. City of College Park*, 379 Md. 142, 154, 840 A.2d 139, 146 (2003), *Eid v. Duke*, 373 Md. 2, 11, 816 A.2d 844, 849 (2003).

Petitioner's conviction under § 445(d)(1)(iii) was suspended "generally" by the trial judge. As the language in question in this subsection, stating that "Each violation shall be considered a separate offense," is identical to the questioned language in § 449(e) and as this subsection, including its identical "violation" phrase, was enacted prior to the 2000 version of § 449(e), its construction is one key to our interpretation of § 449(e).

While the mandatory minimum sentences of § 449(e) first appeared in the Code in 2000, the words, "Each violation shall be considered a separate offense," first appeared in Article 27 when it was added by the Maryland Gun Violence Act of 1996. 1996 Md. Laws, Ch. 561, Ch. 562. Identical to the current § 449(f), *supra,* the 1996 version of § 449(e) stated:

"(e) Except as otherwise provided in this section, any dealer or person who knowingly participates in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subheading shall be guilty of a misdemeanor and upon conviction shall be fined not more than $10,000 or imprisoned for not more than 5 years, or both. Each violation shall be considered a separate offense."

Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 449(e). The "Each violation" clause in the above subsection follows a listing of individual violations of § 445 ("illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm"). The placement of this language strongly suggests that the term "violation" refers to each individual illegal act within the list of enumerated violations of § 445, which, in turn, illustrates that the unit of prosecution is the *illegal act* violating § 445, *i.e.,* the prohibited act of possession, sale, transfer, etc., of the firearm and not the number of prior qualifying convictions. This section of the prior statute was amended by the Responsible Gun Safety Act of 2000, 2000 Md. Laws, Ch. 2, and it was placed into what is now § 449(f).[7] Thus, § 449(f)'s language

---

7. The "Effect of amendments" section of Md.Code (1957, 1996 Repl. Vol.2001 Supp.), Art. 27 § 449 stated, in regard to the new § 449,

may·support petitioner's argument that only one conviction under § 445(d) (and a single penalty under § 449) can be sustained for each violation of § 445.[8]

## D. General Discussion

The Responsible Gun Safety Act of 2000 created new subsections and crimes, one of which was the version of § 449(e) with which petitioner was charged. In its brief, the State offered several accurate descriptions of the bill's purpose, which illustrate the community's concern about felons having firearms. One letter, from the Mayor of Baltimore City, described this public sentiment in saying that "this bill will make our communities safer by removing violent felons from our streets," while a letter from the Maryland Chiefs of Police Association stated that "[f]irearms *do not* belong in the hands of individuals who have previously demonstrated a propensity for criminal conduct or violent behavior" (alteration added). While letters such as these illustrate the strong desire to keep firearms away from felons and potentially violent persons, they do not provide any guidance as to the particular unit of prosecution on which the Legislature intended § 449(e) to operate. In fact, the concerns set forth in these letters are satisfied by petitioner's construction of the statute, as the illegal possessor will still receive a five-year term of imprisonment without the possibility of parole while not being subject to a piling on of sentences resulting from multiple convictions based on a single act of possession.

---

"Chapter 2, Acts 2000 . . . inserted present (e) and redesignated former (e) as (f)." The section, therefore, did not change substantively as a result of the amendments of 2000.

**8.** In this case, both parties agree that petitioner committed only one prohibited act under § 445, a single illegal possession of a regulated firearm by a prohibited person. Our holding does not necessarily preclude multiple convictions and penalties under § 445 and § 449, respectively, where a person not only possesses, but transfers, or sells, or rents, or receives, etc., a regulated firearm. We address here a situation where a prohibited individual possessed a *single* regulated firearm on a *single* occasion while having several qualifying convictions.

Some of the legislative material reveals that the 2000 version of § 449(e) suggests that the unit of prosecution was akin to that of the 1996 version (and later version of § 449(f)), the prohibited act. The Bill Analysis of House Bill 279 [9] stated:

"The bill creates a new felony and a five-year mandatory minimum term of imprisonment for a person who illegally possesses a firearm and *has certain qualifying convictions* for crimes of violence or certain controlled dangerous substances.

* * *

"IX. *Mandatory Minimum for Certain Repeat Offenders*
"The bill creates a new *felony* and a five year mandatory minimum term of imprisonment for a person who illegally *possesses* a regulated firearm (Article 27, § 445(d)(1)(i) and (ii)) if that individual and has been convicted of either: (1) a crime of violence; or (2) unlawful possession, distribution, or importation of a controlled dangerous substance (Article 27, § 286 and § 286A).

"Current law provides that violations of the relevant firearms sections are *misdemeanors.* Article 27, § 449." [Some emphasis added.]

This analysis emphasizes that the new felony is for *possession* of a firearm by a person with *certain qualifying convictions*, which suggests that preventing the act of possessing firearms was the true goal of the legislation, not multiple punishments for a single act based upon multiple prior convictions. The driving force behind the statute, and the evil sought to be remedied, is the *act* of possessing the regulated firearm.

While similar to the ultimate language of § 449(e), the Fiscal Notes for both Senate Bill 211 [10] and House Bill 279

---

**9.** House Bill 279 of 2000, was the Maryland House of Delegates' version of the Responsible Gun Safety Act of 2000, which eventually included the addition of § 449(e).

**10.** Senate Bill 211 of 2000, was the Maryland Senate's version of the Responsible Gun Safety Act of 2000, which eventually included the addition of § 449(e).

identified the new felony with emphasis on the possession of the firearm. Both Fiscal Notes state:

"If a person who was previously convicted of a crime of violence or serious drug offense illegally *possesses* a firearm, the person is guilty of a felony and will be imprisoned for a minimum of five years, and is not eligible for a suspended sentence or parole. Each violation is a separate offense." [Emphasis added.] [11]

These documents contemplate what was already evident in the 1996 version of § 449(e) [12]—that the prohibited act, *i.e.*, in this case illegal possession of a regulated firearm, not the prior conviction, was the vice sought to be remedied by the Responsible Gun Safety Act of 2000. It was to elevate the offense of certain possessions from a misdemeanor classification to a felony classification while retaining a misdemeanor classification for illegal rentals, sales, etc. of firearms. Given this legislative background and construction of the statute, it seems to us that the unit of prosecution for § 449(e) is the prohibited act of illegal possession of a firearm and that the statute does not support multiple convictions based on several prior qualifying offenses where there is only a single act of possession.

---

**11.** The only other mention of the changes to crimes relating to illegal firearm possession in the Fiscal Note includes the following language, which was included in both the Senate and House of Delegate versions of the Fiscal Note:

"This bill's provisions that change the crime of illegally possessing a firearm, when there has been a prior violent or felony offense, from a misdemeanor to a felony means that: (1) such persons would be subject to considerably stiffer sentencing; (2) such cases will be filed in the circuit courts rather than the District Court; and (3) some persons could eventually serve longer incarcerations due to enhanced penalty provisions, applicable to some offenses, for prior felony convictions.

"... Requiring each violation to be considered a separate offense would also tend to add to [Department of Correction] costs, but cannot be reliably estimated." [Alteration added.]

This language, however, does not lend guidance in our search for the Legislature's intent as to the proper unit of prosecution.

**12.** In 1996, what is now contained in subsection (f) was contained in subsection (e), *see supra* at 482.

We have found no cases in this Court that directly speak to the issue before us. We have, however, recently had cause to discuss sentencing issues under § 449(e) in *Price v. State,* 378 Md. 378, 835 A.2d 1221 (2003).[13] In *Price,* we held that the defendant was not subject to the mandatory minimum sentences of § 449(e) because his prior conviction for daytime housebreaking was not incorporated as a "crime of violence" under § 441. We noted that "Section 449(e), by its plain structure, is divided into two requirements. The first requirement is that the defendant have a previous conviction of a crime that falls within § 441(e). The second requirement is that the defendant have a current conviction under § 445(d)(1)(i) and (ii)." *Price,* 378 Md. at 384, 835 A.2d at 1224. In a footnote following that text, we also noted a possible problem in the language of § 449(e) when we said:

> "Petitioner does not raise, and we do not decide, any question with respect to the second requirement of § 449(e). Therefore, we do not consider whether § 449(e)'s mandatory sentencing imperative requires a conviction under both § 445(d)(1)(i) *and* (ii), as the plain language indicates. Although Price was convicted pursuant to only § 445(d)(1)(ii), we assume for purposes of this case alone that this was sufficient to satisfy the second requirement of § 449(e), and that the only issue before us is whether the first requirement, that his prior crime fall within § 441(e), was satisfied." [14]

*Id.* at 384–85 n. 4, 835 A.2d at 1225 n. 4.

While admitting that the statute "is not a model of clarity," the State, quoting the language from the Bill Analysis for Senate Bill 211, contends that Senate Bill 211 was intended to

---

**13.** *Price* had not been decided by this Court at the time of the filing of the unreported opinion of the Court of Special Appeals in the instant case. Accordingly, that court did not have the benefit of *Price* when it rendered its decision.

**14.** Likewise, because it has not been raised in the instant case, we do not address the meaning of the word "and" in the context of the statute. In the present case, previous convictions on both (i) an (ii) had occurred.

require illegal firearm possession coupled with being " 'previously convicted of a crime of violence *or* certain serious controlled dangerous substances violations.' " The State refers to the newly codified Md.Code (2003), § 5–133 of the Public Safety Article's special revisor's note, which states, in part:

"As enacted by Ch. 5, Acts of 2003, this section was new language derived without substantive change from former Art. 27, § 449(e) and § 445(d), (e), and, except as it related to the transfer of regulated firearms, (a). However, Ch. 17, Acts of 2003, amended subsection (c)(1) of this section to correct a technical error.

. . .

■ "The Public Safety Article Review Committee noted in Ch. 5, for consideration by the General Assembly, that the meaning of the reference in former Art. 27, § 449(e) to a person 'who is in illegal possession of a firearm as defined in § 445(d)(1)(i) and (ii) of [Art. 27]' was unclear. Former Art. 27, § 445(d)(1)(i) and (ii) prohibited a person who has been convicted of a crime of violence or any violation classified as a felony in this State from possessing a regulated firearm. The General Assembly may wish to clarify the meaning of former Art. 27, § 449(e), which is revised in subsection (c) of this section." [15]

The Senate Analysis and the language of Md.Code (2003), § 5–133 of the Public Safety Article (hereinafter, "§ 5–133") merely highlight the confusion regarding the wording in § 449(e). The plain language of § 449(e) argument, urged on this Court by the State, appears to be directly at odds with this subsequent history. At best for the State, the language is ambiguous, and ambiguous units of prosecution and penalty provisions in criminal statutes, pursuant to the rule of lenity, must normally be construed in favor of the defendant.

---

**15.** The new statute, Md.Code (2003), § 5–133 of the Public Safety Article, discussed *infra*, amended the language of former Art. 27, § 449(e), as it uses the word "or" instead of "and."

In discussing what the rule of lenity requires in the context of former Md.Code (1957, 1996 Repl.Vol., 1998 Supp.), Art. 27 § 286(d), this Court has stated that:

> "an enhanced penalty statute, is highly penal and must be strictly construed so that the defendant is only subject to punishment contemplated by the statute. When doubt exists regarding the punishment imposed by a statute, the rule of lenity instructs that a court
>
>> 'not interpret a . . . criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended.' "

*Melgar v. State,* 355 Md. 339, 347, 734 A.2d 712, 716–17 (1999) (quoting *White v. State,* 318 Md. 740, 744, 569 A.2d 1271, 1273 (1990)) (citations omitted). *See also Webster v. State,* 359 Md. 465, 481, 754 A.2d 1004, 1012 (2000) (stating that "ambiguity in a criminal penal statute, in accordance with the rule of lenity, ordinarily is to be construed against the State and in favor of the defendant"); *McGrath v. State,* 356 Md. 20, 25, 736 A.2d 1067, 1069 (1999).

In the case *sub judice,* there is no doubt that § 449(e), a statute which creates a mandatory minimum five-year sentence without the possibility of parole, fits within the definition of "an enhanced penalty statute." As § 449(e) provides no definition of the term "violation," and provides no specific direction as to the proper unit of prosecution, we hold that § 449(e) is ambiguous as to that point and accordingly construe § 449(e) narrowly. The fact that the plain language of § 449(e), as it existed at the time of the offense here at issue, leaves us nothing more than "a guess" as to which violation (the illegal possession or prior felony or both, *see Price, supra* at 487, as of the time of convictions in the case at bar) triggers the mandatory minimum sentence, requires that the rule of lenity be applied.

Petitioner proffers several cases from our Court to support his argument regarding ascertaining the proper unit of prosecution: *Eldridge v. State,* 329 Md. 307, 619 A.2d 531 (1993);

*Satterfield v. State,* 325 Md. 148, 599 A.2d 1165 (1992), *Dickerson v. State,* 324 Md. 163, 596 A.2d 648 (1991) and *State v. Owens,* 320 Md. 682, 579 A.2d 766 (1990). While none of these cases are determinative on the issue before us, as they do not deal with the statutory scheme at issue in the case *sub judice,*[16] they do offer some insight as to how this Court has used a common sense approach to avoid absurd or illogical results in determinations of legislative intent regarding intended units of prosecution.

In *Eldridge v. State, supra,* this Court construed a statute which prohibited both the carrying of a deadly weapon when concealed on the person as well as openly carrying a deadly weapon with intent to injure another. We held that allowing separate convictions of a defendant, one for carrying a concealed weapon and the other for openly carrying the same weapon, where the defendant, in the course of the same incident carried a weapon both concealed and open, was an absurd result. We stated:

> "We conjure up this scenario. Eldridge parks his car on the bar's parking lot. He removes the starter pistol from the glove compartment, gets out of the car and puts the pistol in his pocket. He walks toward the bar and on the way removes the pistol from his pocket, checks it and replaces it in his pocket. He enters the bar. In the men's room he again checks the pistol and then pockets it. Entering the barroom, he pulls the pistol from his pocket and at pistol point commits the robbery, threatening to kill the victim. Upon fleeing the scene he again puts the pistol in his pocket. During the course of this conduct he carried the weapon concealed five times and carried it openly four times. Under the trial court's interpretation, Eldridge could be convicted of five offenses of carrying a deadly weapon concealed and of four offenses of carrying the weapon openly. He would be subject to a sentence of 3

---

**16.** These cases were decided prior to the enactment of the version of § 449 and § 445 pursuant to which petitioner was convicted and sentenced.

years on each offense for a total 27 years. This would be absurd. We cannot conceive that such pyramiding of sentences reflects the intention of the Legislature."

*Eldridge,* 329 Md. at 314–15, 619 A.2d at 535 (footnote omitted).

In *Satterfield v. State, supra,* we used a common sense approach in holding that separate convictions for different items of drug paraphernalia were inappropriate. We stated:

"Further, we believe it clear that the legislature did not seek to proscribe the use of items identified as paraphernalia (such as sandwich baggies) in and of themselves. Rather these items, which may have common innocent uses, are punishable only under circumstances indicating an intent to use them in conjunction with a controlled dangerous substance. This requisite connection is evidenced by the language of § 287(d)(2), which makes it unlawful to possess the enumerated items of paraphernalia 'under circumstances which reasonably indicate an intention to use any such item for the illegal manufacture, distribution, or dispensing of any controlled dangerous substance.' Consequently, we believe that it is at least equally plausible that the legislature intended for the controlled dangerous substance to dictate the unit of prosecution in charges for paraphernalia as well. Since both the State and defense counsel agree that the syringe and the plastic baggies were used to prepare the PCP-laced parsley for sale, there is no dispute that both items of paraphernalia were used in conjunction with a single controlled dangerous substance. Under this analysis, it would seem that the legislature intended but one unit of prosecution."

*Satterfield,* 325 Md. at 154–55, 599 A.2d at 1168 (footnote omitted).

In *Dickerson v. State, supra,* we pointed out the illogical results stemming from a construction of a drug statute that allowed a conviction for both possession of cocaine with intent to distribute and possession and use of drug paraphernalia

where the defendant had possession of one vial of cocaine. In reversing the lower court, we held:

> "It is the State's position that, in most instances, dual convictions are not only permitted, but were contemplated, and intended, by the Legislature. This position represents a strained interpretation of § 287A, which is productive of results that are illogical and unreasonable. For example, under this view, possession of a single marijuana cigarette would produce two convictions: one for possession of marijuana and, because the cigarette paper is a 'container' for the marijuana, another for use of drug paraphernalia. Similarly, because cocaine must be contained in something, the concealment of a single piece of crack cocaine in an accused's shirt pocket, or even in an ordinary paper bag, would also give rise to two convictions—for the possession and, the shirt pocket and paper bag being containers, for use of drug paraphernalia. Indeed, because drug paraphernalia may be, by virtue of use, almost anything, even items with no special characteristics making them suitable for use in connection with drug use, the State's position, as petitioner argues, would authorize two convictions for virtually every possession charge."

*Dickerson,* 324 Md. at 174, 596 A.2d at 653 (footnotes omitted).

Finally, in *State v. Owens, supra,* we held that PCP laced marijuana was a single controlled dangerous substance because the drugs were bound together in a manner that was nearly impossible to reverse. In discussing the illogical results if we were to hold otherwise, we stated:

> "The instant case involves marihuana that has been 'laced' with phencyclidine (PCP)—that is, the marihuana has been dipped into, or sprayed with, PCP. Although this process does not involve chemical changes in either of the substances used, it mechanically binds the two together in a way that renders it impossible, in any practical sense, to separate them. This fact places this case more toward the end of the spectrum involving a controlled substance or compound that chemically contains another controlled dangerous substance, *e.g.,* heroin containing molecules of mor-

phine, than toward the other end represented by separate controlled dangerous substances separately packaged and available for separate sale, distribution, or use.

"An analogy may be drawn to the making of a martini by mixing together gin and vermouth, two alcoholic beverages. Maryland Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.) Article 27, § 400A makes it a civil offense for 'any person under the age of 21 years to have in his possession . . . any alcoholic beverage. . . .' Surely, if a person under 21 is detected drinking a martini, he is not guilty of two offenses.

"Taking a common sense view of the matter, we are simply not persuaded that the legislature intended separate prosecutions and punishments for possession of PCP and possession of marihuana where the two substances have been, for all practical purposes, irrevocably joined as one."

*Owens,* 320 Md. at 687–88, 579 A.2d at 768.

In the case *sub judice,* if we were to construe § 449(e)'s "Each violation" to allow multiple convictions for each prior conviction of an individual where that individual only possessed a single firearm during a single incident, the possible results could be illogical. In essence, interpreting the unit of prosecution as the prior conviction would be akin to stating that the societal evil to be remedied, *i.e.,* the main goal of the statute to be cured, is punishing persons with prior convictions based solely on their status, *i.e.,* criminalizing their status, where the goal is actually to punish illegal *possessions* of firearms.

Federal cases involving a similar statute offer further support to our interpretation of § 449(e). In *United States v. Dunford,* 148 F.3d 385 (4th Cir.1998), Judge Niemeyer, for the United States Court of Appeals for the Fourth Circuit, held, when reviewing a law similar to Maryland's firearm laws, that a defendant should not have been charged with multiple counts of illegal possession of a firearm under 18 U.S.C. § 922(g)(1) where several charges stemmed from a single act

of illegal possession of multiple firearms coupled with Dunford's multiple prior convictions.[17]   The Fourth Circuit stated:

"Based on the six guns and the ammunition seized on October 4, 1995, from Dunford's house, Dunford was indicted and convicted on fourteen firearms counts, seven under 18 U.S.C. § 922(g)(1) (prohibiting possession of a firearm or ammunition *by a convicted felon*) and seven under § 922(g)(3) (prohibiting possession of a firearm or ammunition *by an illegal drug user*).   Contending that he should have been charged and convicted on only one firearms count, Dunford argues that (1) a person in possession of a firearm who is both a felon and a drug user does not violate the statute more than once for each act of possession, and that (2) his possession of all six firearms and the ammunition constituted only one act of possession within the meaning of the statute.   He contends that his conviction on fourteen separate counts is unconstitutionally duplicative. We find his arguments persuasive.

"Section 922(g) of Title 18 makes it unlawful for a person in one of nine specified classes to possess a firearm or ammunition.   Thus, the statute prohibits firearm possession by, for example, convicted felons, fugitives, unlawful users of drugs, adjudicated 'mental defectives,' and illegal aliens. While the prohibited conduct is the possessing of any firearm or ammunition, the statute applies only to members of classes specified in the statute.

"Dunford is a member of at least two of the disqualifying classes, being a convicted felon and an illegal drug user. He argues, however, that whether he is a member of one of

---

**17.**   The Fourth Circuit additionally held that Dunford's simultaneous possession of six firearms constituted one possession under the statute. Thus, that court only affirmed one of Dunford's 18 convictions under the federal statute even though he illegally possessed six different firearms.   The Court held "that Dunford's possession of the six firearms and ammunition, seized at the same time from his house, supports only one conviction of 18 U.S.C. § 922(g)." *Dunford,* 148 F.3d at 390.   As petitioner in the case *sub judice* was convicted of possessing one firearm, we do not reach the issue of whether § 445(d)(1) and § 449(e) and (f) could support multiple convictions for a single person simultaneously possessing numerous regulated firearms.

the disqualifying classes or of all nine, *a single act of possession can only constitute a single offense. We agree.*

"The nine classes of people barred from firearm possession by § 922(g) are those classes which consist of persons, who by reason of their status, Congress considered too dangerous to possess guns. *But we see nothing in the statute which suggests that Congress sought to punish persons by reason of their legal status alone. If we were to interpret the statute to establish separate offenses for each separate status, we would, in effect, be criminalizing the status itself.*

"Thus, we hold that while a person must be a member of at least one of the nine classes prohibited from possessing guns under § 922(g), a person who is disqualified because of membership in multiple classes does not thereby commit separate and multiple offenses. The offense is determined by performance of the prohibited conduct, *i.e.,* the possessing of a firearm or ammunition. In so holding, we join the other courts that have reached a similar conclusion. *See United States v. Johnson,* 130 F.3d 1420, 1425–26 (10th Cir.1997), *petition for cert. filed* (April 1, 1998) (No. 97–8558); *United States v. Munoz–Romo,* 989 F.2d 757, 759–60 (5th Cir.1993); *United States v. Winchester,* 916 F.2d 601, 605–08 (11th Cir.1990); *but cf. United States v. Peterson,* 867 F.2d 1110, 1115 (8th Cir.1989) (convictions under §§ 922(g)(1) and (g)(3) for same act of possession did not violate the Double Jeopardy Clause), *abrogated on other grounds, Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)."

*Dunford,* at 388–89 (some citations omitted) (some emphasis added).

Similarly, in *United States v. Winchester,* 916 F.2d 601 (11th Cir.1990), the United States Court of Appeals for the Eleventh Circuit held that 18 U.S.C. § 922(g),[18] which prohibits posses-

---

**18.** This statute was the statute under which Winchester was convicted and was the same statute analyzed in the *Dunford, supra.* It was part of the Gun Control Act of 1968 and it stated:

sion of firearms and ammunition to members of certain classes, could not support separate convictions against one person where that person possessed a single firearm, but fell into more than one of the prohibited classes. In finding the imposition of consecutive sentences for the possession of a single firearm on one particular occasion to be contrary to both common sense and the intention of Congress, the Eleventh Circuit stated:

"The statute does not expressly indicate whether Congress intended to permit consecutive sentencing for the same incident under two subdivisions of section 922(g). Under 18 U.S.C. § 924(a)(2), Congress provided criminal penalties for the violation of subsection (g) of section 922, but it did not list separate penalties for the separate subdivisions of subsection (g). Furthermore, each subdivision of subsection (g) differs only in its requirement that the offender have a certain 'status' under the law.

"The title of the statute, the Gun Control Act of 1968, leaves no doubt that the statutory purpose is to limit or control the possession of firearms. The statutory structure

---

"(g) It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) who is a fugitive from justice;

(3) who is an unlawful user of or addicted to any controlled substance . . . ;

(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

(5) who, being an alien, is illegally or unlawfully in the United States;

(6) who has been discharged from the Armed Forces under dishonorable conditions; or

(7) who, having been a citizen of the United States, has renounced his citizenship;

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

18 U.S.C. § 922(g) (1988). While different from Maryland's statutes, its content is similar, and thus instructive, in that the federal statute also makes it illegal for certain classes of individuals to possess certain firearms.

indicates that, in enacting section 922(g), Congress sought only to bar the possession of firearms by certain types of persons that it considered dangerous. *It does not suggest that Congress also sought to punish persons, who are described in the various categories set forth in section 922(g), solely for having a certain status under the law.*

"In addition, while section 922(g) prohibits *the possession* of firearms by persons described in its subdivisions, section 922(d) prohibits *the sale* of firearms to the same categories of persons. As the Supreme Court noted, '[t]he very structure of the Gun Control Act demonstrates that Congress . . . sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous.' *Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976). Hence, it would appear that, in enacting section 922(g), it was not within Congress' comprehension or intention that a person could be sentenced, for a single incident, under more than one of the subdivisions of section 922(g).

. . .

*"The statutory language and legislative history of the Gun Control Act of 1968 reveal that Congress' intent was to prohibit the possession of firearms by classes of individuals it deemed dangerous, rather than to punish persons solely for having a certain status under the law. . . .*

. . .

"Furthermore, the government's interpretation of section 922(g) would lead to an anomalous and draconian result. Under the government's interpretation, a defendant, who was described under one or more of the statuses listed in the numbered subdivisions contained in subsection (g), could be sentenced consecutively under each status. Hence, a convicted felon who is also a fugitive from justice, a drug addict, a 'mental defective,' and an illegal alien, could be sentenced to five consecutive terms of imprisonment for the same incident, namely, the possession of a firearm. It was this interpretation of the statute which led to Winchester's

being sentenced to two consecutive terms. To avoid such a result, we hold that Congress did not intend to provide for the punishment of a defendant under two or more separate subdivisions of 18 U.S.C. § 922(g)." [19]

*Winchester*, 916 F.2d at 605–07 (some emphasis added).

These federal cases are informative as to the case *sub judice*. They interpret the federal statute to criminalize the possession of guns by persons prohibited from possessing them, not to criminalize a person's status. The Fourth and Eleventh Circuits found that Congress did not intend to punish an individual for having a particular legal status alone and that such a construction was illogical. The State argues that the Maryland statute's final clause stating, "Each violation shall be considered a separate offense," distinguishes the federal cases on its face. Regardless of this additional language, the purpose of the Maryland statute is essentially the same as its federal counterpart: to keep firearms away from potentially dangerous individuals and to punish those who violate this law by possessing firearms. The purpose is not to punish an individual for his or her status as a person with multiple prior qualifying convictions and allowing multiple convictions for a single prohibited act under § 445(d)(1). As we have construed the unit of prosecution to be the act of possession (or, in the case of violations of § 449(f), the act of illegal sale, transfer, purchase, or receipt), the addition of the last sentence of § 449(e) does not distinguish Maryland's restrictions on firearm possession from its federal counterpart.

The current and recodified version of the statute under which petitioner was convicted, lends support to our holding and provides some insight into the Legislature's intent regarding which unit of prosecution it intended for § 449(e). The relevant sections of the current code are located in § 5–101

---

**19.** While petitioner in the case *sub judice* was sentenced to concurrent sentences under the statute and not to consecutive sentences for his convictions based on his different qualifying offenses, if we were to interpret § 449(e) as the State requests then such draconian results, as discussed in *Winchester,* could occur in the future.

and § 5–133 of the Public Safety Article.[20]  Maryland Code (2003), § 5–101 of the Public Safety Article (hereinafter, " § 5–101") states:

" **§ 5–101.  Definitions.**

\* \* \*

(g) *Disqualifying crime.*[ [21]]—'Disqualifying crime' means:

(1)  a crime of violence;

(2)  a violation classified as a felony in the State;  or

(3)  a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years." [Footnote added.]

The revisor's note for § 5–101(g) states:

"This subsection is new language derived without substantive change from former Art. 27, § 442(h)(2)(i) 1, 2, and 3; § 443(e)(4)(iii) 1, 2, and 3 and (j)(2)(i), (ii), and (iii); and § 445(b)(3) and (1)(i), (iii), and, except for reference to conspiracy to commit certain crimes, (ii) and (d)(3) and (1)(i), (ii), and (iii).

"The term '[d]isqualifying crime' is added to avoid the repetition of the phrases 'a crime of violence', 'any violation classified as a felony in this State', and 'any violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years'."

This new language, which is derived without substantive change from § 445(d)(1), illustrates that the underlying prior convictions are not the focus of the statute, but merely a classification of persons, *i.e.*, an element of the crime which is

---

**20.**  Former Art. 27, § 449(f) was recodified without substantive change into Md.Code (2003), § 5–143 of the Public Safety Article, entitled "Knowing participation in violation of subtitle."

**21.**  As used in this statute, the term "disqualifying crime" creates a prohibition against certain persons possessing firearms.  At the same time a violation of the statute's prohibitions is a "qualifier" for the mandatory sentencing provisions of the statute.  We have, generally, used the term qualifier in the latter context in our opinion.  The term "disqualifying crime" appears for the first time in the 2003 revision.  It is not present in the statute under which petitioner was convicted.

satisfied once the defendant falls into any one of the several qualified classifications of persons. The fact that this language has substantively the same meaning as § 445(d)(1)'s terms show that prior convictions are not the aim of the statutory prohibitions of § 445 and § 449, but a means of labeling certain persons that the General Assembly has chosen to prohibit from being able to possess a firearm.

The Legislature utilized the § 5–101(g) term "Disqualifying crime" in § 5–133(b) of the Public Safety Article to describe a class of individuals prohibited from possessing regulated firearms in Maryland, in effect replacing § 445(d), while the text of § 5–133(c), essentially recodified, in part, former Art. 27, § 449(e). These relevant provisions [22] of § 5–133 of the Public Safety Article, which were also enacted without substantive change from former § 449(e) and § 445(d) and (e),[23] state:

" **§ 5–133. Restrictions on possession of regulated firearms.**

\* \* \*

(b) *Possession of regulated firearm prohibited.*—A person may not possess a regulated firearm if the person:

(1) has been convicted of a disqualifying crime;

(2) has been convicted of a violation classified as a common law crime and received a term of imprisonment of more than 2 years;

(3) is a fugitive from justice;

(4) is a habitual drunkard;

(5) is addicted to a controlled dangerous substance or is a habitual user;

(6) suffers from a mental disorder as defined in § 10–101(f)(2) of the Health—General Article and has a history of violent behavior against the person or another, unless the

---

**22.** Subsections (a) and (d) entail State preemption over local jurisdictions and possession by persons under age 21, respectively.

**23.** *See* the "Special Revisor's Notes" to § 5–133, *see supra* at 488.

person has a physician's certificate that the person is capable of possessing a regulated firearm without undue danger to the person or to another;

(7) has been confined for more than 30 consecutive days to a facility as defined in § 10–101 of the Health—General Article, unless the person has a physician's certificate that the person is capable of possessing a regulated firearm without undue danger to the person or to another;

(8) is a respondent against whom a current non ex parte civil protective order has been entered under § 4–506 of the Family Law Article; or

(9) if under the age of 30 years at the time of possession, has been adjudicated delinquent by a juvenile court for an act that would be a disqualifying crime if committed by an adult.

(c) *Penalty for possession by person convicted of crime of violence.*—(1)  A person may not possess a regulated firearm if the person was previously convicted of:

(i) a crime of violence; or

(ii) a violation of § 5–602, § 5–603, § 5–604, § 5–605, § 5–606, § 5–607, § 5–608, § 5–609, § 5–612, § 5–613, or § 5–614 of the Criminal Law Article.

(2) A person who violates this subsection is guilty of a felony and on conviction is subject to imprisonment for not less than 5 years, no part of which may be suspended.

(3) A person sentenced under paragraph (1) of this subsection may not be eligible for parole.

(4) Each violation of this subsection is a separate crime."
The Legislature, similar to its rewording of the relevant subsections of Article 27 into § 5–101(g) of the Public Safety Article, emphasized the importance of the possession of the firearm as the key prohibited conduct in § 5–133(c).  Instead of beginning the subsection with "A person who was previously convicted of a crime of violence . . ."as in former section 449(e), the general Assembly chose to focus first on possession by starting § 5–133(c)(1) with "A person may not *possess* a regulated firearm if . . ." (emphasis added).  While this may

appear to be insignificant, it puts the emphasis of the statute clearly on the prohibited act, the possession, and not the prior conviction. As written in the Public Safety Article, the "Each violation" language of § 5–133(c)(4) clearly references the act of possession as described in § 5–133(c)(1). The subsection provides a "[p]enalty for *possession* by [a] person convicted of a crime of violence" (alterations added) (emphasis added). The focus of the penalty, *i.e.*, the "violation" to be punished, is the act of possession. The fact that the Public Safety Article was enacted without substantive change from the relevant sections Art. 27 and that the plain language indicates that the prohibited act of possession is the unit of prosecution supports our analysis of § 449(e).

Finally, we note again the position of the United States Court of Appeals for the Fourth Circuit in *Dunford, supra,* that to hold as the State suggests would be ". . . criminalizing the status itself." *Dunford,* 148 F.3d at 389. It would be a separate criminal offense to have been convicted of the prior predicate offense. Such a person, if his status was criminalized, would be committing a criminal offense 24 hours a day merely by existing—by being alive. To criminalize the status would be absurd.

### III. Conclusion

In conclusion, we hold that Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27 § 449(e) is unclear and ambiguous as to whether the phrase "Each violation shall be considered a separate offense" refers to each current act of illegal possession or to each prior qualifying felony conviction. When construed using the tools of statutory construction and common sense, punishing each current illegal possession of a regulated firearm by any person fitting with the definition of § 445(d)(1)(i) and (ii) appears to be the object of § 449(e)'s mandatory minimum sentence. Accordingly, one of the elements of the statutory crime at issue in the case at bar, is that one or more of the qualifying prior convictions must exist in order for there to be a single conviction under § 445. Our case law, federal case law, the construction of the recodified

Public Safety Article and the rule of lenity all support our construction of the last sentence of both § 449(e) and (f). Being that the statute was meant to create punishments for each act of possession and not for each prior conviction, only one of petitioner's convictions under § 445(d)(1), specifically his conviction under § 445(d)(1)(i), can stand. Accordingly, we affirm that conviction under § 445(d)(1)(i) and reverse the remaining two.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY ON THE CONVICTION UNDER § 445(D)(1)(i) AND TO REVERSE THE JUDGMENT ON THE CONVICTIONS UNDER § 445(D)(1)(ii) AND § 445(D)(1)(iii). COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**