REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 701

September Term, 2013

BRIAN CLARK

v.

STATE OF MARYLAND

Eyler, Deborah S.,
Graeff,
Raker, Irma S.
    (Retired, Specially Assigned),

JJ.

Opinion by Eyler, Deborah S., J.

Filed: July 31, 2014

A jury in the Circuit Court for Prince George's County found Brian Clark, the appellant, guilty of robbery, wearing or carrying a handgun on his person, transporting a handgun in a vehicle, possession of a regulated firearm by a person under the age of 21, and theft under $1,000.[1] Thereafter, the court found the appellant guilty of possession of a regulated firearm after conviction of a crime of violence and possession of a regulated firearm by a prohibited person.

The appellant was sentenced to 15 years, with all but ten years suspended for robbery; three years suspended for wearing and carrying a handgun on his person; three years suspended for transporting a handgun in a vehicle; 15 years, with all but ten years suspended, consecutive, for possession of a regulated firearm after a conviction of a crime of violence; 15 years, with all but ten years suspended, for possession of a regulated firearm by a person under the age of 21; and 15 years suspended for possession of a regulated firearm by a prohibited person. The court merged the theft conviction into the robbery conviction for sentencing. These sentences totaled 66 years, with all but 30 years suspended, which included a mandatory minimum of 20 years.

The appellant noted a timely appeal, presenting five questions, which we have rephrased:

I.    Did the trial court err in denying the appellant's motion to exclude evidence of inconclusive DNA test results?

---

[1] The jury found the appellant not guilty of robbery with a dangerous weapon, first-degree assault, second-degree assault, and use of a handgun in the commission of a crime of violence.

II.     Did the trial court err in accepting the appellant's waiver of jury trial on two counts?

III.    Did the trial court err in admitting an irrelevant and prejudicial letter that the appellant wrote while incarcerated?

IV.     Could the appellant only be convicted of one count of possession of a regulated firearm and one count of wearing, carrying, or transporting a handgun?

V.      Did the trial court err in sentencing the appellant to a non-parolable minimum term of ten years for the conviction of possession of a regulated firearm after conviction of a crime of violence?

We shall vacate the appellant's convictions for possession of a regulated firearm by a prohibited person and possession of a regulated firearm by a person under 21; vacate his sentence for transporting a handgun in a vehicle; vacate his sentence for possession of a regulated firearm after conviction of a crime of violence and remand for resentencing on that conviction; and otherwise affirm the judgments.

## FACTS AND PROCEEDINGS

On the night of July 9, 2011, Thomas Gant, who is a transgender person who goes by the name Tiffany, was standing at the I-12 bus stop on Addison Road in Prince George's County waiting for the rain to stop, so she could finish walking to the train station. A four-door "Goldish-color car" pulled up and two men got out and robbed her at gunpoint. At trial, Gant identified the appellant as the man who held the gun, pointed at her back. She also identified photographs of the car and the gun. The photographs were admitted into evidence.

2

Gant testified that the appellant wore a mask over his face, but she was able to identify him by his clothing and skin tone. During the robbery the appellant told her to "Give that shit up." He and the other man took her purse and bag, jumped back into the car, made a right turn onto Addison Road, and drove away. After the men left, Gant ran across the street to the police station. No one was there, so she called 911. A tape of the 911 call was admitted into evidence and played for the jury.

Officer Bryan Stevens was responding to the robbery call when he saw the vehicle described in the police broadcast drive past him. He stopped it and attempted to conduct a traffic stop. Two men jumped out of the vehicle and ran. The appellant was the man who jumped out of the back seat passenger side of the vehicle. Officer Stevens gave chase. He apprehended the appellant in front of Fairmont Heights High School. He saw that the appellant was missing a shoe. The missing shoe was recovered by a police K-9 dog. It was within close proximity to a handgun. The K-9 dog continued tracking the appellant's path, which ended at Fairmont Heights High School.

Police responded to the scene, met with Gant, and took her to two locations for show ups: Fairmont Heights High School, where Gant identified the appellant, and another location a few hundred yards away, where Gant identified the other man and the gold car used in the robbery. The items the men had taken from Gant were recovered from the gold car; Gant identified them.

3

The gold car was processed and DNA swabs were obtained from the interior passenger front door and armrest and the driver's side door. DNA swabs also were obtained from the appellant and from the handgun. The swabs were packaged, sealed, and sent to the DNA lab for testing.

Additional facts will be discussed below as pertinent.

## DISCUSSION

### I.

The appellant contends the trial court erred by admitting inconclusive and therefore irrelevant DNA results from the gun. He maintains that the error was not harmless because the evidence was highly prejudicial and the jurors may have placed "heavy weight . . . on the failure of the scientific DNA evidence to exclude [him] as one of those who handled the gun." The State responds that the DNA evidence was relevant to show that its investigation was thorough; and the evidence was not unfairly prejudicial because the appellant was neither included nor excluded as a possible contributor. The State asserts that the fact that the DNA results were inconclusive shows that any error in admitting them was harmless beyond a reasonable doubt.

When defense counsel moved *in limine* to exclude the DNA evidence found on the gun, the following colloquy occurred:

> [DEFENSE COUNSEL]: Thank you, Judge. The DNA is found on the gun in this case. I'm moving in limine to keep that DNA out. I am moving in limine to keep the DNA that comes back inconclusive to the handgun in this matter. It's on the theory that the State admits that it can neither exclude nor

4

include my client which, basically, is to say it can't be used to convict it, can't be used to acquit. It shouldn't be talked about at all at that point.

[PROSECUTOR]: Your Honor, I believe that it's evidence, and for the jury to weigh the evidence in the light whether they believe that means – it doesn't include or exclude him, however, it's up to the jury to decide what kind of weight, if any, to give that type of evidence.

THE COURT: On what basis are we not presenting that to the jury?

[DEFENSE COUNSEL]: On the basis that there is DNA done on several items, and a lot of which may be conclusive or not as to my client, but the DNA on the gun came back as not conclusive, which means it can't include or exclude him as having ever held the gun.

THE COURT: So you're not planning to argue lack of evidence?

[DEFENSE COUNSEL]: Well, Your Honor, I'm sure the State wants to include that to throw it up there. At least the jury can think, well, maybe it does include him, but the DNA doesn't say so. But they can't use it necessarily to convict because it's not his for sure, and I couldn't use it to acquit necessarily because it doesn't say it's not him either. So I'm arguing that that's kind of a stand off and that that shouldn't be included at all.

THE COURT: I'm asking you are you going to argue that the State didn't put on enough evidence?

[DEFENSE COUNSEL]: Well, I've always argued that, no matter what they put forward.

THE COURT: So you don't feel that it's fair game for them to be able to rebut that argument?

[DEFENSE COUNSEL]: Well, I don't think they can rebut since it doesn't prove that he ever held the gun.

[PROSECUTOR]: It does rebut the fact that the State did attempt to collect DNA evidence off of the gun. If that was not included, defense would be free to argue the State didn't swab the gun, didn't produce DNA on the gun and that's not the correct statement of evidence. I do believe that the jury is

5

capable of weighing whether or not they believe the DNA evidence in giving it such weight as they deem appropriate, which Your Honor would instruct them.

THE COURT: Okay. Your motion is denied on that.

The following day, before the DNA expert took the stand, defense counsel again moved to exclude the gun DNA evidence. Defense counsel argued:

. . . For the record, because we're about to proceed with the DNA expert, she's in the hallway. I want to reiterate what I mentioned earlier about the motion in limine to keep out the DNA that was recovered from the gun because the only conclusion that could be drawn from that was that it could neither include my client nor exclude my client.

And based on that, I'm thinking that my argument is just common sense, what a jury is going to view that's going to be prejudicial because they're thinking well, DNA, if it can't exclude him, then it must include him or it must be at least a possibility.

Our argument is just when you need it beyond a reasonable doubt to let the jury have that mindset would just be erroneous to start with.

And the other one is there is swabs taken from the interior door handle which says is a partial mix of DNA, etc., and the conclusion there is no further conclusions can be made regarding this evidence item which, basically, means that we found DNA. It's a mix of people. No further conclusions means even less than we can't include or exclude him. It's even below that. We can't make any conclusion from that at all.

So I think having the jury hear that, I mean if the State presents that, the jury is going to, well, they must think at least it's possible it could be his, but I don't think that's good enough for when an expert is going to testify and their opinion is being used to help the jury to understand scientific evidence to make an informed conclusion.

To say that there really is no conclusion and present it in that light would be, I think, erroneous. We ask that the handle of DNA and the gun DNA be excluded.

6

The court denied the motion.

Christina Tran was accepted as an expert in the field of forensic serology and DNA analysis. During her testimony the DNA report and the DNA swabs were admitted into evidence without objection. Tran testified that the swabs from the interior front passenger door yielded a partial-mixed DNA profile; she was unable to reach any further conclusions. The swabs from the handgun also yielded a mixed DNA profile from at least two contributors. The appellant was neither included nor excluded as a possible contributor. Finally, Tran testified that the swabs tested from the recovered shoe were consistent with the appellant's DNA profile. Defense counsel stipulated that the shoe belonged to the appellant.

Rule 5-402 provides: "Except as otherwise provided by constitutions, statutes, or these rules, or by decisional law not inconsistent with these rules, all relevant evidence is admissible. Evidence that is not relevant is not admissible." Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5-401.

"Trial judges generally have 'wide discretion' when weighing the relevancy of evidence." *State v. Simms*, 420 Md. 705, 724 (2011) (quoting *Young v. State,* 370 Md. 686, 720 (2002)). "While trial judges are vested with discretion in weighing relevancy in light of unfairness or efficiency considerations, trial judges do not have discretion to admit irrelevant evidence." *Id.* "Thus, we must consider first, whether the evidence is legally relevant, and,

7

if relevant, then whether the evidence is inadmissible because its probative value is outweighed by the danger of unfair prejudice, or other countervailing concerns as outlined in Maryland Rule 5-403."[2]  *Id.* at 725.

We addressed the admissibility of inconclusive DNA results in *Diggs & Allen v. State*, 213 Md. App. 28, 66-67, *cert. granted*, 436 Md. 327 (2013).  We held that, even though "an inconclusive test is evidence of nothing, . . . any error committed in admitting th[e] evidence is harmless beyond a reasonable doubt because evidence of nothing could not prejudicially affect the fairness of [the] trial."

Here, the inconclusive DNA test result on the gun may well have been relevant to show that the State performed a DNA test at all.  As the prosecutor pointed out, without that evidence the defense could argue that the State had not performed a DNA analysis of the gun that, if performed, could have ruled out the appellant.  In any event, even if the evidence were not relevant, its admission was harmless beyond a reasonable doubt.  An error is harmless when a reviewing court is "satisfied that there is no reasonable possibility that the evidence complained of – whether erroneously admitted or excluded – may have contributed to the

---

[2]Rule 5-403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

rendition of the guilty verdict." *Dionas v. State*, 436 Md. 97, 108 (2013) (quoting *Dorsey v. State*, 276 Md. 638, 659 (1976)).

The appellant argues that the holding in *Dionas* limits the application of the harmless error doctrine in this case. In *Dionas*, the trial court prohibited the defense from cross-examining a State's witness about whether the witness had any expectation of receiving leniency in a separate pending case in exchange for testifying against the defendant. On appeal, this Court held that the trial court erred in so limiting the cross-examination but that the error was harmless because of the strength of the State's case and the limited impact the cross-examination probably would have had.

The Court of Appeals granted *certiorari* and reversed. It explained that, "in a harmless error analysis, the issue is not what evidence was available to the jury, but rather what evidence the jury, in fact, used to reach its verdict." 436 Md. at 109. The Court criticized this Court for "improperly substitut[ing] its fact-finding and credibility determinations for those of the jury; [and] independently, and, in total disregard of the jury's responsibility as the trier of facts, weigh[ing] the evidence produced at trial." *Id.* at 113. The *Dionas* Court stated that this Court's "conclusion, that the proffered cross-examination likely would have had limited impact, given the strength of the State's case, was an assumption that could have only been made upon the evidence it would have credited." *Id.* at 116. The Court characterized this application of the *Dorsey* analysis as the "otherwise sufficient" test: "if the evidence is sufficient without the improper evidence, if the jury could have convicted

9

without it, harm could not have resulted." *Id.* at 116-17. The Court rejected the "otherwise sufficient" test as a misapplication of the harmless error doctrine and explained that the proper harmless error inquiry is "whether the trial court's error was unimportant in relation to everything else the jury considered in reaching its verdict." *Id.* at 118 (footnote omitted).

Here, Tran testified that the DNA analysis of the swabs from the gun yielded a mixed profile and the appellant could not be included or excluded as a possible contributor. The DNA results, therefore, were evidence of nothing *vis-à-vis* the appellant's criminal agency. The appellant argues that any error in admitting this evidence was not harmless beyond a reasonable doubt because the jury might have placed weight on the fact that the DNA evidence did not exclude him as a possible contributor. That interpretation of Tran's testimony is taken out of context; she also testified that the appellant was *not included* as a possible contributor. The DNA results and Tran's testimony did not provide the jury with any information about who might have held the gun. We are confident that, under the test articulated in *Dionas*, the trial court's ruling on the DNA gun evidence, if erroneous, was of no importance at all in relation to what the jurors had before them to consider in reaching their verdict. Accordingly, any error was harmless beyond a reasonable doubt.

**II.**

Before the start of trial, counsel and the court discussed severing Counts 8 and 10 of the indictment from the other counts:

> [DEFENSE COUNSEL]: Because counts eight and ten of the indictment deal with disqualifying crime[s] for possession of a gun that was

10

found in this matter. More specifically, count eight is possession of a regulated firearm after conviction of a crime of violence, and count ten is possession of a regulated firearm by a prohibited person.

I think the State agrees to move to sever those counts from this trial, but we would stipulate that if, in fact, [the appellant] were convicted of the other charges, or the other counts here, that we would stipulate that he does have a prior, he is on probation for that, and that he is a prohibited person from possessing.

THE COURT: So how do you want to deal with that?

[DEFENSE COUNSEL]: If, in fact, he was found guilty, then we stipulate to everything else, those would be a conviction, as well, Your Honor.

[PROSECUTOR]: I've done it. It would be a bench trial for those counts, and the Court would just follow the verdict of the jury, and the State would just put on the record that that conviction is a conviction for attempted robbery, CT-09-1020A.[3]

THE COURT: Does your client understand that?

[DEFENSE COUNSEL]: Just let me go over it again with him.

* * *

THE COURT: I would like to make sure you advise [the appellant] and he understands.

[DEFENSE COUNSEL]: I did, Your Honor, and he understands.

THE COURT: Is that correct, sir?

[THE APPELLANT]: Yes, ma'am.

---

[3]The prior conviction actually was for robbery, not attempted robbery.

As discussed above, the jury returned convictions for robbery, wearing or carrying a handgun, transporting a handgun, possession of a regulated firearm by a person under the age of 21, and theft under $1,000. At sentencing, the prosecutor alerted the court that there were remaining counts:

> THE COURT: What counts were they?
>
> [PROSECUTOR]: I believe they were counts eight and ten, Your Honor.
>
> THE COURT: Count eight is what?
>
> [PROSECUTOR]: Possession of a firearm after a conviction of a crime of violence. I believe the defense stipulated the defendant has a conviction for robbery.
>
> The State also has a certified copy of that that would be State's Exhibit Number 1. And we would be moving that into evidence as well for the purposes of the mandatory sentence.
>
> THE COURT: Any objection?
>
> [DEFENSE COUNSEL]: No, Your Honor. I think we mentioned before trial that that [sic] was the agreed upon disposition.
>
> THE COURT: And ten?
>
> [PROSECUTOR]: Count ten was possession of a regulated firearm by a prohibited person against the defendant that has a conviction in CT 08-0856A for robbery. And therefore would be a prohibited person from carrying a firearm.
>
> THE COURT: Any objection?
>
> [DEFENSE COUNSEL]: No. That's the same as before, Your Honor.

12

THE COURT: Very well. So, based upon the admission of that evidence and the defense consent – there is another count?

\* \* \*

THE COURT: So, it is guilty as to count eight, guilty as to count ten based upon the admission of evidence and the consent of the defendant with respect to him not being allowed to possess a firearm after having been convicted of a crime of violence and being a prohibited person. And those two maximum are?

[PROSECUTOR]: They are 15 years each, Your Honor, with a mandatory five.

The appellant contends the "convictions and sentences on Counts 8 and 10 must be vacated because of the trial court's failure to comply with the express requirements of Md. Rule 4-246(b)," which governs the procedure for acceptance of a jury trial waiver. He asserts that the trial court erred by accepting his jury trial waiver without his being examined on the record; and, under *Valonis & Tyler v. State*, 431 Md. 551 (2013), the trial court erred by not determining and announcing on the record that the jury trial waiver was made knowingly and voluntarily.

The State responds that "the error [the appellant] complains about was invited by [him] both prior to trial and during sentencing, and therefore he has waived any right to appellate review of this question." It points out that the actual proceedings were not really a bifurcation of the two counts so as to be tried non-jury. Rather, they were "in some respects akin to a stipulation of guilt conditioned on the jury finding [the appellant] involved in the robbery."

13

We begin with the *Valonis* issue.  Recently, in *Nalls & Melvin v. State*, 437 Md. 674 (2014), the Court of Appeals revisited *Valonis* and explained that, with respect to preservation, it had taken the *Valonis* case for decision even though there had been no contemporaneous objection because it was exercising its discretion to do so under Rule 8-131(a).  Indeed, in *Nalls & Melvin*, the Court took the cases for decision even though there was no contemporaneous objection, again exercising its discretion under Rule 8-131(a).  In so explaining, the Court made clear that to preserve for appellate review an alleged error by the trial court in accepting a jury trial waiver, there must be a contemporaneous objection.  *See Meredith v. State*, ___ Md. App. ___, Slip op., No. 603, 2013 Term (filed June 26, 2014).

In the case at bar, the appellant did not lodge an objection to the court's failure to "determine and announce" as required by Rule 4-246(b).  Under *Nalls & Melvin* and *Meredith*, the appellant's contention of error in this regard is not preserved for review.

As noted, the appellant also argues that the trial court violated Rule 4-246(b) by accepting a jury trial waiver without his having been examined on the record in open court, as required by Rule 4-246(b).  Under that rule, the examination may be conducted by the court, the State's Attorney, defense counsel, or any combination thereof.  Its purpose is to ensure that the waiver of the right to a jury trial, which is guaranteed by the Sixth Amendment to the United States Constitution and Articles 5, 21, and 24 of the Maryland

14

Declaration of Rights, is made knowingly and voluntarily. *Abeokuto v. State*, 391 Md. 289, 316 (2006).

Here, there was a discussion between the appellant and his counsel about the process that would be followed for Counts 8 and 10, but, to the extent that process involved a jury trial waiver, the discussion, even if it was an examination, was not on the record and was not in open court. We conclude, however, that any error on the part of the trial court in this regard was harmless beyond a reasonable doubt.

We agree with the State's observation that the procedure the parties agreed to follow with respect to Counts 8 and 10 was not actually a waiver of the right to a jury trial with those counts to be decided by the court as a fact-finder. Rather, it was a stipulation that, if the jury found the appellant guilty of possessing a handgun, convictions would be entered by the court on Counts 8 and 10, which charged, respectively, possession of a regulated firearm (which includes a handgun) after conviction of a crime of violence and possession of a regulated firearm by a prohibited person.

There was no factual dispute that the appellant had a past conviction for robbery that is a crime of violence and made him a person prohibited from possessing a regulated firearm. Indeed, in the colloquy we have quoted above, defense counsel expressly stipulated to that fact. Thus, there were no facts that needed to be found -- by a judge or a jury -- in that regard. And a stipulation to convictions on Counts 8 and 10 upon a finding by the jury that the appellant had been in possession of a handgun ensured that the jurors would not hear any

15

evidence about the appellant's past robbery conviction. For obvious reasons, that was the last thing the defense wanted the jurors to learn.

In keeping with the stipulation, once the jury returned its verdict, which included a finding of guilt on possession of a handgun, the trial court did not take evidence, make factual findings, or render verdicts on Counts 8 and 10. It did nothing until the day of sentencing, when it simply entered convictions on those counts and imposed sentences, as the appellant had requested and the parties had agreed.

In these circumstances, any Rule 4-246(b) error by the court plainly made no difference whatsoever in the outcome of the case. The appellant wanted the issue of guilt on Counts 8 and 10 to be determined by stipulation and not by a jury or court decision; and he got precisely what he wanted. Given the stipulation procedure that the defense advocated and obtained, and given the harm that likely would have resulted from the jurors' learning of the appellant's past robbery conviction, we are confident, beyond a reasonable doubt, that, if the trial court had perfectly complied with Rule 4-246(b), Counts 8 and 10 still would not have gone to the jury and still would have been decided by stipulation. Thus, the trial court's failure to follow the jury trial waiver procedure in Rule 4-246(b) made no difference in the outcome of this case.[4]

---

[4]Although the process that was used to resolve Counts 8 and 10 was the process the appellant requested, to the extent that process involved a jury trial waiver (which, as explained, it actually did not), the failure to examine the appellant on the record in open court was not an invited error. As we have held, however, any such error plainly was harmless
(continued...)

16

## III.

On direct examination of Detective Darryl Wormuth, the State sought to admit certified records of the appellant's jail mail correspondence. The following colloquy occurred at the bench:

> [PROSECUTOR]: Your Honor, the State is now going to move to admit certified record [sic] of defendant's jail mail, which has been certified by the jail, and ask Detective Wormuth [to] read it. And in the letter the defendant states something along the lines of he robs a faggy, and it's a letter to his mother.

> [DEFENSE COUNSEL]: I object to it. I don't think it actually says that for one thing.

> [PROSECUTOR]: Would Your Honor like to read it?

> THE COURT: Sure. What's the basis? Are you saying that the letter was not admissible?

> [DEFENSE COUNSEL]: It's just kind of, I mean, duplicitous. He's just saying what he's charged with. We already have it into evidence. I mean, it's more prejudicial than probative.

> [PROSECUTOR]: Your Honor, it doesn't just say what he's charged with. It describes the victim. Defendant's argument that it wasn't him that did the robbery. Nobody but the person that did the robbery would have a description of the victim, would know that the victim was not of straight demeanor or know any of that kind of stuff because the only person that would know that is not in the statement of charges, it's not in any of the discovery that would have been provided or would have been provided by the date this was sent, which was July 30, 2012. It goes to consciousness of guilt and it's the defendant's words, and I do believe it is admissible. And very probative.

---

[4](...continued)
beyond a reasonable doubt.

17

[DEFENSE COUNSEL]: He was told all of those things in the bull pen and get on the stand.

THE COURT: I'm going to allow it. The question is, do you want the entire letter in or just want a certain portion of it?

[PROSECUTOR]: I'm saying that I would be happy with just this. And I can redact the remaining of it, if you like.

[DEFENSE COUNSEL]: It should all come in because this is exculpatory.

[PROSECUTOR]: Okay.

[DEFENSE COUNSEL]: But, again, I object, because it really just supposes that he hasn't found out since he's been in jail and who he's charged with robbing.

THE COURT: It supposes that.

[DEFENSE COUNSEL]: [Prosecutor] is saying [the appellant] could only know the description he gave that the person was basically a transvestite. That he could only know that because he was there and this is within three weeks after the fact, and he's been in the jail all the time. He's certainly been told who he allegedly robbed and who that person is. Co-defendants were in the jail.

[PROSECUTOR]: At that time, I think one of them was in jail.

[DEFENSE COUNSEL]: Weeks prior to that.

[PROSECUTOR]: Gartrell bonded out within 24 hours and Ricky Howard wasn't picked up for two weeks after the robbery.

[DEFENSE COUNSEL]: It's my understanding he got – learned that information while in jail. And to have him have basically his statement come in, which is ambiguous –

[PROSECUTOR]: It was pretty direct as to his knowledge of the robbery.

18

THE COURT: I'm letting it in.

Thereafter, the State moved to admit the letter into evidence as State's Exhibit 30,

defense counsel did not object, the court admitted the exhibit into evidence, and Detective

Wormuth read the letter to the jury.[5] The letter dated, July 30, 2012, is as follows:

> Ma, I u Doin I'm writing u this Letter cuz if u really think that I Did wat they sayin I did this stuff I'm not worry about I'm worry Bout Ms. Clark and Ms. Malloy Come on now I got Loc up with 80$ and had money in the House Wat I look like Doing something like that It Just Don't add up But I won't tell u wuz good wit it. But Just no I'm in here for a faggy say we robb him come on now But ask who cuzzin henson Do he no him his name is thoma Gant Don't no his street name But Dark skin wit tracks in his hair like aunt Jackie light tress like a girl Luv u ma and I'm Bout to write Ms. Clark and see wat see talking bout Luv u.

The appellant contends the trial court abused its discretion by admitting the letter into

evidence because the danger of unfair prejudice substantially outweighed the probative value

of the letter. *See* Md. Rule 5-403. The State responds that the "court was within its

discretion in determining that any risk of the jury being offended by [the appellant's] slur [the

word "faggy"] was outweighed by the probative value of a letter demonstrating that [the

appellant] knew details about his victim that he was unlikely to have known absent actual

involvement in the crime."

As discussed above in Question I, trial judges have wide discretion in determining

whether relevant evidence may be excluded "if its probative value is substantially

---

[5] There were slight differences between the transcribed letter and the letter written by the appellant, which was admitted into evidence. Because the issue on appeal is whether the appellant's letter was admissible, we refer to the language in the letter.

outweighed by the danger of unfair prejudice." Md. Rule 5-403. The appellant does not contest the relevance of the letter on appeal. He argues only that its probative value was substantially outweighed by the danger it created of unfair prejudice. The trial court did not abuse its discretion in determining that the potential for unfair prejudice was outweighed by the probative value of the letter. The letter was highly probative because the appellant referred to the victim by name, told his mother that he was in jail for robbing her, and provided a very specific description of what she looked like. The use of the term "faggy" to describe Gant was not such as to create unfair prejudice, especially given the factual context for the letter. The court acted well within its discretion in determining that the probative value outweighed the danger of unfair prejudice.

**IV.**

Next, the appellant contends his convictions for possession of a regulated firearm should merge into Count 8 (Possession of a Regulated Firearm After Conviction of a Crime of Violence), which of those convictions is the one carrying the greatest penalty. He also argues that, under the rule of lenity, his convictions for wearing or carrying a handgun on his person and transporting a handgun in a vehicle should merge.

**Possession of a regulated firearm after a disqualifying offense**

The appellant argues that "[t]he holding in *Wimbish* [*v. State*, 201 Md. App. 239] requires that two of the three weapons convictions in this case be vacated leaving only the conviction on Count 8, as this is the conviction carrying the greatest penalty." The State

20

agrees that the appellant's "three convictions for violating Public Safety Article §5-133 in three different ways should merge."

The appellant was convicted under the following three subsections of Maryland Code (2003, 2011 Repl. Vol.), section 5-133 of the Public Safety Article ("PS"):

(b) *Possession of regulated firearm prohibited*
Subject to § 5-133.3 of this subtitle, a person may not possess a regulated firearm if the person:
    (1) has been convicted of a disqualifying crime;

* * *

(c) *Penalty for possession by convicted felon*
(1) A person may not possess a regulated firearm if the person was previously convicted of:
        (i) a crime of violence;

* * *

(d) *Possession by person under age of 21 years prohibited; exceptions*
(1) Except as provided in paragraph (2) of this subsection, a person who is under the age of 21 years may not possess a regulated firearm.

In *Wimbish*, we explained that when considering whether multiple convictions under PS section 5-133 can stand, we do not apply merger principles but instead make "a determination of the appropriate 'unit of prosecution' for the offense." 201 Md. App. at 271 (quoting *Melton v. State,* 379 Md. 471, 474 (2004)). The defendant in *Wimbish* was convicted under PS sections 5-133(c)(1) and 5-133(d). We applied the holding in *Melton* and concluded that "when [the defendant] possessed a single regulated firearm, which was illegal under § 5–133 for two reasons (his age and his prior conviction for a crime of violence), he

21

committed only one violation of that section." 201 Md. App. at 272. The Court in *Melton* had "held that the 'illegal possession of a regulated firearm, not the prior conviction, was the vice sought to be remedied' by the statute." *Id.* at 271 (quoting *Melton*, 379 Md. at 484-86). "In other words, 'the statute d[id] not support multiple convictions based on several prior qualifying offenses where there [wa]s only a single act of possession.'" *Id.* at 271-72 (quoting *Melton*, 379 Md. at 486) (alterations in *Wimbish*).

Accordingly, we concluded in *Wimbish* that "only one of [the defendant's] convictions under § 5–133 [could] stand." *Id.* at 272. Following the precedent in *Melton*, we "affirm[ed] the conviction for the offense with the greater penalty, that is, possession by a person previously convicted of a crime of violence, and reverse[d] the conviction for the offense with the lesser penalty, that is, possession by a person under the age of twenty-one." *Id.* (citing *Melton,* 379 Md. at 503).

Likewise, in this case the appellant was convicted under three subsections of PS section 5–133, each involving the illegal possession of the same regulated firearm. Applying the holdings in *Melton* and *Wimbish*, we conclude that only one of the appellant's convictions under PS section 5–133 can stand. Accordingly, we shall affirm the conviction with the greater penalty, possession of a regulated firearm after conviction of a crime of violence, and vacate the convictions for possession of a regulated firearm by a person under 21 years of age and possession of a regulated firearm by a prohibited person.

**Wearing, carrying, or transporting a handgun on one's person and transporting a handgun in a vehicle**

22

Maryland Code (2002, 2012 Repl. Vol.), section 4-203(a) of Criminal Law Article

("CL") states, in relevant part:

> Prohibited. – (1) Except as provided in subsection (b) of this section [which does not apply here], a person may not:
>
>> (i) wear, carry, or transport a handgun, whether concealed or open, on or about the person;
>>
>> (ii) wear, carry, or knowingly transport a handgun, whether concealed or open, in a vehicle traveling on a road or parking lot generally used by the public, highway, waterway, or airway of the State;
>>
>> (iii) violate item (i) or (ii) of this paragraph while on public school property in the State; or
>>
>> (iv) violate item (i) or (ii) of this paragraph with the deliberate purpose of injuring or killing another person.

The penalty provisions for a conviction are set forth in subsection (c). They include

minimum mandatory sentences for convictions under CL section 4-203 when the defendant

previously has been convicted under CL section 4-203 or under section 4-204 (use of a

handgun in the commission of a crime of violence), 4-101 (wearing or carrying certain

dangerous weapons), or 4-102 (carrying or possessing certain deadly weapons on school

property).

The appellant was convicted of violating CL section 4-203(a)(1)(i) -- wearing,

carrying, or transporting a handgun on or about his person -- and CL section 4-203(a)(1)(ii) --

wearing, carrying, or knowingly transporting a handgun in a vehicle traveling on a road. He

acknowledges that these convictions "probably do not merge" under the required evidence

23

test.  He contends, however, that under the rule of lenity the court was prohibited from imposing separate sentences for these convictions.  The State responds that the convictions do not merge under the required evidence test and "the two sentences for discrete violations of Criminal Law 4-203 should remain intact."  We agree that the convictions do not merge under the required evidence test but conclude that the rule of lenity applies.

Under the required evidence test, one criminal offense merges into another "'when both offenses are based on the same act or acts'" and "'one [offense] is a lesser included offense of the other.'"  *State v. Lancaster*, 332 Md. 385, 391 (1993) (quoting *In re Montrail M.,* 325 Md. 527, 531 (1992)) (some internal quotation marks omitted) (further citation omitted).  "The required evidence test 'focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter.'"  *Id.* (quoting *Snowden v. State*, 321 Md. 612, 617 (1986)) (some internal quotation marks omitted) (further citation omitted).  Plainly, the offenses under CL section 4-203(a)(1)(i) and CL section 4-203(a)(1)(ii) contain distinct elements that are not included in the other; respectively, wearing, carrying, or transporting a handgun "on or about the person," and wearing, carrying, or knowingly transporting a handgun "in a vehicle traveling on a road."  Therefore, the appellant's convictions for these offenses do not merge under the required evidence test.

> The rule of lenity is a common law doctrine that directs courts to construe ambiguous criminal statutes in favor of criminal defendants.  In the context of

24

whether two offenses may be punished separately, it is well-understood that "[t]wo crimes created by legislative enactment may not be punished separately if the legislature intended the offenses to be punished by one sentence."

*Alexis v. State*, 437 Md. 457, 484-85 (2014) (quoting *White v. State*, 318 Md. 740, 744 (1990)) (alteration in *Alexis*). In deciding whether to apply the rule of lenity,

"we look first to whether the charges arose out of the same act or transaction, then to whether the crimes charged are the same offense, and then, if the offenses are separate, to whether the Legislature intended multiple punishment for conduct arising out of a single act or transaction which violates two or more statutes . . . ."

*Id.* at 485-86 (quoting *Morris v. State*, 192 Md. App. 1, 39 (2010)) (some internal quotation marks and citations omitted).

The State maintains that the appellant's convictions under CL sections 4-203 (a)(1)(i) and (ii) did not arise out of the same act or transaction and were for two separate offenses.

"The 'same act or transaction' inquiry often turns on whether the defendant's conduct was 'one single and continuous course of conduct,' without a 'break in conduct' or 'time between the acts.'" *Id.* at 486 (quoting *Morris*, 192 Md. App. at 39). Here, the evidence adduced supported a reasonable finding that the appellant transported the gun in a car to where the robbery was committed; got out of the car and held the gun to the victim's back; got back in the car with the gun; and then fled from the car, holding the gun as he ran off. The State maintains that these events were not a single act or transaction. In particular, transporting the gun in the vehicle to the robbery and fleeing the car on foot while holding the gun were two separate acts that did not adjoin or overlap in time.

25

The acts were part of a single transaction, however, in that they were the beginning, middle, and end of the robbery. They were the means by which the appellant transported the gun -- whether by vehicle or on his person -- to commit the robbery and to escape afterward. In this situation, even though we recognize that two distinct offenses were committed, we cannot say that the legislature intended that more than one sentence be imposed. The court imposed the same sentence (three years suspended) for each crime. We shall vacate the sentence for transporting a handgun in a vehicle.

## V.

Finally, the appellant contends the circuit court erred by sentencing him to 15 years, with all but a mandatory ten years suspended, on Count 8, under a mistaken belief that the statute mandated a minimum of ten years to be served. The appellant argues that, because the statute only requires a five-year mandatory minimum sentence, resentencing is required. The State responds that the court properly was exercising its discretion when it imposed a ten-year executed period in sentencing.

After the court found the appellant guilty of possession of a regulated firearm after a conviction of a crime of violence, the prosecutor stated that the maximum sentence was "15 years . . . with a mandatory five." The court announced the sentence on Count 8 as follows: "As to count eight, the sentence of the Court will be 15 years. I will suspend all but ten mandatory. That will be consecutive as to count two." There was no objection. The

26

sentence of 15 years, with all but 10, mandatory, was entered on the appellant's commitment record.

The penalty provision for possession of a regulated firearm after conviction of a crime of violence is found in PS section 5-133(c)(2):

(i) Subject to paragraph (3) of this subsection, a person who violates this subsection is guilty of a felony and on conviction is subject to imprisonment for not less than 5 years and not exceeding 15 years.

(ii) The court may not suspend any part of the mandatory minimum sentence of 5 years.

(iii) Except as otherwise provided in § 4-305 of the Correctional Services Article, the person is not eligible for parole during the mandatory minimum sentence.

"It is well settled that challenges to sentencing determinations are generally waived if not raised during the sentencing proceeding." *Bryant v. State*, 436 Md. 653, 660 (2014). "There are limited grounds on which a sentence may be properly reviewed by this Court despite the failure to object at the time of the proceedings. One such avenue for review . . . is Md. Rule 4-345(a), which provides that a 'court may correct an illegal sentence at any time.'" *Id.* at 662. "This exception is a limited one, and only applies to sentences that are 'inherently' illegal." *Id.* "'We have consistently defined this category of illegal sentence as limited to those situations in which the illegality inheres in the sentence itself . . . .'" *Id.* at 662-63 (internal quotation marks omitted).

Here, we agree with the appellant that, regardless of the sentence imposed, only the first five years of the sentence is mandatory and to be served without the possibility of parole.

27

It appears from the record that the court thought, incorrectly, that the appellant was subject to a mandatory minimum sentence of ten years without parole for his conviction under Count 8, and sentenced him accordingly. That sentence was contrary to law. We shall vacate it and remand for resentencing on Count 8 in accordance with PS section 5-133(c)(2).

**CONVICTIONS FOR POSSESSION OF A REGULATED FIREARM BY A PERSON UNDER TWENTY-ONE AND POSSESSION OF A REGULATED FIREARM BY A DISQUALIFIED PERSON VACATED. SENTENCE ON CONVICTION FOR TRANSPORTING A HANDGUN IN A VEHICLE VACATED. SENTENCE ON CONVICTION OF POSSESSION OF A REGULATED FIREARM AFTER CONVICTION OF A CRIME OF VIOLENCE VACATED AND CASE REMANDED FOR RESENTENCING ON THAT CONVICTION. JUDGMENTS OTHERWISE AFFIRMED. COSTS TO BE PAID ONE-HALF BY PRINCE GEORGE'S COUNTY AND ONE-HALF BY THE APPELLANT.**