REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0063

September Term, 2016

IVAN POTTS

v.

STATE OF MARYLAND

Krauser, C.J.,
Wright,
Raker, Irma S.
 (Senior Judge, Specially Assigned),

JJ.

Opinion by Wright, J.

Filed: December 28, 2016

Following a jury trial in the Circuit Court for Baltimore City, Ivan Potts, appellant, was convicted of wearing, carrying, and transporting a firearm; possession of a firearm after having been convicted of a crime of violence; and possession of ammunition after having been prohibited from possessing a regulated firearm. He was sentenced to incarceration for a term of eight years, the first five without the possibility of parole, for the possession of a firearm offense, and concurrent terms of one year for each of the other crimes. This timely appeal followed.

## Questions Presented

Potts presents the following questions for our consideration:

I. Did the trial court err in admitting hearsay during the testimony of one of the police officers?

II. Must the commitment record and docket entries be corrected to reflect accurately the sentence announced in open court for wearing and carrying a firearm?

III. Did the circuit court err in imposing separate sentences for possession of a firearm after having been convicted of a crime of violence and possession of ammunition after having been prohibited from possessing a regulated firearm?

IV. Was the evidence sufficient to sustain the convictions?

For the reasons set forth below, we shall remand this case to the circuit court for the purpose of correcting Potts's commitment record and affirm in all other respects.

## Factual Background

On September 2, 2015, Baltimore City Police Sergeant Wayne Jenkins, Detective Maurice Ward, and Detective Evodio Hendrix were conducting an investigation, unrelated to the instant case, in the West Forest Park area of Baltimore City. The officers

1

were in an unmarked police vehicle equipped with lights and a siren, and were wearing plain clothes and black tactical vests with the word "police" written in white letters on the front and back. As they drove in the wrong direction on Fairview Avenue approaching Chelsea Terrace, they saw Potts walking toward them. When Potts was about five to seven townhouses away, Sergeant Jenkins and Detective Ward observed his left arm swinging freely and his right hand "affixed to his mid-section," grabbing his dip area. Both officers testified that grabbing the dip area is an indication that a person is armed.

Potts looked up and appeared to notice the officers. He then took a black handgun from his waistband, turned his back to the officers, and fled. Detectives Ward and Hendrix exited the police vehicle and chased Potts while Sergeant Jenkins gave chase in the police vehicle. When Sergeant Jenkins next saw Potts, he was running with both hands "open." Shortly thereafter, Potts was apprehended by the detectives. Detective Hendrix testified that none of the officers used a baton or any other weapon resembling a baton.

After Potts was apprehended, Sergeant Jenkins went back to the location where he had last observed Potts and recovered a loaded black and silver firearm with a magazine containing sixteen rounds. Potts was transported to Central Booking by Baltimore City Police Officer Richard Lyles. Central Booking refused to receive Potts, so Officer Lyles drove him to St. Agnes Hospital. Potts told Officer Lyles that "they fucked me up." Officer Lyles observed an open wound on Potts's thigh.

About two hours after Potts was arrested, Sergeant Jenkins and the detectives were notified that Potts was at St. Agnes Hospital because he had a laceration on his thigh.

2

They went to the hospital where they observed Potts's pants and saw that they were not cut and did not have blood on them. Sergeant Jenkins and Detective Ward testified that Potts had not made any complaint about an injury after he was arrested.

Jennifer Ingbretson, an expert in firearms operability, testified that the weapon recovered by Sergeant Jenkins and the detectives met the definition of a handgun and a firearm and that it was operable. She also was given for examination a total of sixteen cartridges, the maximum capacity for the handgun, one of which was loaded in the gun and fifteen others that were in the magazine.

The parties stipulated that, as the result of a prior conviction, Potts was prohibited from possessing a regulated firearm and ammunition. We shall include additional facts as necessary in our discussion of the questions presented.

## Discussion

## I.

Potts first contends that the circuit court committed reversible error in admitting hearsay evidence during Detective Hendrix's testimony. He directs our attention to the following portion of Detective Hendrix's testimony:

> [PROSECUTOR]: So what, if anything, at that time did you do after – do did you – did you observe your fellow detectives begin to take official action?

> [DET. HENDRIX]: Yes. At that point while driving Sergeant Jenkins and Detective Ward alerted me that the defendant has his right arm cupped – cupped to his body.

> [DEFENSE COUNSEL]: Objection, Your Honor.

> THE COURT: You heard something from your fellow officers.

3

[DET. HENDRIX]: Yes.

THE COURT: All right. We'll stop right there and hear the next question.

Potts argues that Detective Hendrix's testimony was hearsay that bolstered the State's theory that Potts possessed a gun that he discarded as he ran from police. He maintains that although the circuit court's statements might have prevented Detective Hendrix from repeating the hearsay, they did not "amount to a sustaining of the objection[.]" Even if the detective's testimony was not hearsay, Potts argues that the danger of unfair prejudice outweighed any probative value that the testimony might have had and that the admission of the testimony was not harmless.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5-801(c). "Except as otherwise provided by [the Maryland Rules] or permitted by applicable constitutional provisions or statutes, hearsay is not admissible." Md. Rule 5-802.

At the outset, we agree with Potts that the testimony at issue constituted inadmissible hearsay. Detective Hendrix's statement that Sergeant Jenkins and Detective Ward told him that Potts had his arm "cupped" to his body was made in furtherance of the truth of the matter asserted. The circuit court erred in not explicitly sustaining the

4

objection.[1]  Nonetheless, we decline to reverse Potts's convictions because any error in the admission of Detective Hendrix's statement was harmless.

Error is harmless when "a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict." *See State v. Simms*, 420 Md. 705, 738 (2011) (citation omitted). "In considering whether an error was harmless, we also consider whether the evidence presented in error was cumulative evidence." *Dove v. State*, 415 Md. 727, 743 (2010). Specifically:

> Evidence is cumulative when, beyond a reasonable doubt, we are convinced that there was sufficient evidence, independent of the [evidence] complained of, to support the appellant['s] conviction [ ].  In other words, cumulative evidence tends to prove the same point as other evidence presented during the trial or sentencing hearing.  For example, witness testimony is cumulative when it repeats the testimony of other witnesses introduced during the State's case-in-chief.  The essence of this test is the determination whether the cumulative effect of the properly admitted evidence so outweighs the prejudicial nature of the evidence erroneously admitted that there is no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded.

---

[1] The court responded to defense counsel's objection by having Detective Hendrix verify that he "heard something from [his] fellow officers" and then stating, "[w]e'll stop right there and hear the next question."  Although the court prevented Detective Hendrix from repeating the hearsay, it did not expressly sustain the objection.  In *Bazzle v. State*, 426 Md. 541, 560-61 (2012), the Court of Appeals reiterated that "[a] contemporaneous general objection to the admission of evidence ordinarily preserves for appellate review all grounds which may exist for the inadmissibility of the evidence." (Quoting *Boyd v. State*, 399 Md. 457, 476 (2007)).  "[T]he only exceptions to the principle that a general objection is sufficient are where a rule requires the ground to be stated, where the trial court requests that the ground be stated, and where the objector, although not requested by the court, voluntarily offers specific reasons for objecting to certain evidence[.]" *Id.* (quoting *Boyd*, 399 Md. at 476).

*Id.* at 743-44 (internal citations omitted).

In this case, the statement concerning Potts's right hand cupping or holding his body was cumulative. Both Sergeant Jenkins and Detective Ward testified that they saw Potts with his right hand holding his dip area and, shortly thereafter, saw him pull a gun from his waistband. Detective Hendrix testified only that he heard his fellow officers say something, not that he saw Potts with a weapon.

Potts relies on *Graves v. State*, 334 Md. 30 (1994), to argue that Detective Hendrix's testimony was so prejudicial that the decision of the finder of fact would have been different had the tainted evidence been excluded. His reliance on that case, however, is misplaced. There, Graves was charged with assault and attempted robbery. *Graves*, 334 Md. at 32. One of the victims, Derek Jones, testified that as he was waiting for a bus, two men approached him, one of whom pulled out a gun and said, "[d]on't move." *Id.* at 34. When Jones's father approached to ask what the problem was, Jones pushed the gun away and ran down the street and the two men fled. *Id.* After speaking with Jones, police arrested Kenneth Trusty, who told police that Graves had been his accomplice. *Id.* Jones identified Trusty as one of his assailants and, after viewing a photographic array, identified Graves as the gunman. *Id.* At trial, the State did not call Trusty to testify against Graves. *Id.* at 35. Instead, the State relied upon the testimony of a police officer with whom Trusty spoke after he was arrested. *Id.* Over objection, the police officer testified that Trusty told him Graves had been his accomplice. *Id.* The

6

court admitted a notebook kept by the police officer in which he wrote down what Trusty told him. *Id.*

In considering the admission of the police officer's testimony, the Court of Appeals held that the probative value of the testimony about what Trusty said was outweighed by the risk of unfair prejudice:

> [I]f the statement was offered for the purpose of proving the truth of the matter asserted by Trusty, it was clearly inadmissible hearsay. On the other hand, if it was offered for its limited probative value to show that the officer acted upon it in arranging the photographic array, that probative value was greatly outweighed by its unfair prejudice to Graves because of the danger of misuse of the information by the jury.

*Id.* at 43.

Potts argues that the testimony of Detective Hendrix was unfairly prejudicial because "the jury would have been unable to treat testimony about how Mr. Potts 'cupped' his arm as anything other than substantive evidence." That is not the case. In *Graves*, the Court held that the testimony was critical and prejudicial because Trusty's statement "provided a bridge that synthesized and buttressed the identifications of Graves by [the two victims]." *Id.* The statements of the eyewitnesses added "substantial, perhaps even critical, weight to the State's case against Graves." *Id.* at 43. In the case at hand, Detective Hendrix's statement was not critical to the case. It did not bridge a gap, as in *Graves*, but merely explained why he exited the police vehicle and pursued Potts. As we previously noted, it was cumulative and only reiterated the testimony of Sergeant Jenkins and Detective Ward, and was harmless error at best.

7

For these reasons, we hold that any error in the admission of the testimony was harmless.

## II.

Potts next contends that his commitment record and the docket entries for this case should be corrected to reflect the sentence announced in open court. The State agrees and so do we.

For the crime of possession of a firearm after having been convicted of a crime of violence, Potts was sentenced to a term of incarceration of eight years, the first five of which were to be served without the possibility of parole. For each of the remaining crimes, he was sentenced to concurrent terms of one year. Potts's commitment record erroneously indicates that he was sentenced to three years for wearing, carrying, and transporting a firearm. "'When there is a conflict between the transcript and the commitment record, unless it is shown that the transcript is in error, the transcript prevails.'" *Lawson v. State*, 187 Md. App. 101, 108 (2009) (quoting *Douglas v. State*, 130 Md. App. 666, 673 (2000)). Accordingly, we shall remand this case to the circuit court for correction of the commitment record and docket entries to reflect the sentence that was announced in court.

## III.

Potts next challenges the circuit court's imposition of separate sentences for possession of a firearm after having been convicted of a crime of violence and possession

8

of ammunition after having been prohibited from possessing a regulated firearm.[2]  He

argues that both convictions were predicated upon the possession of the same loaded

firearm and, under either a unit-of-prosecution analysis or pursuant to traditional

principles of merger, the sentence for possession of ammunition must be vacated.

---

[2] Possession of a firearm after having been convicted of a crime of violence is governed by Md. Code (2011 Repl. Vol., 2015 Supp.), § 5-133(c)(1) of the Public Safety Article ("PS"), which provides:

(c) *Penalty for possession by person convicted of crime of violence.* -- (1) A person may not possess a regulated firearm if the person was previously convicted of:
    (i) a crime of violence;
    (ii) a violation of § 5-602, § 5-603, § 5-604, § 5-605, § 5-612, § 5-613, or § 5-614 of the Criminal Law Article;  or
    (iii) an offense under the laws of another state or the United States that would constitute one of the crimes listed in item (i) or (ii) of this paragraph if committed in this State.

Possession of ammunition after having been prohibited from possessing a regulated firearm is governed by PS § 5-133.1, which provides:

(a) *"Ammunition" defined.* -- In this section, "ammunition" means a cartridge, shell, or any other device containing explosive or incendiary material designed and intended for use in a firearm.

(b) *In general.* -- A person may not possess ammunition if the person is prohibited from possessing a regulated firearm under § 5-133(b) or (c) of this subtitle.

(c) *Penalty.* -- A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 1 year or a fine not exceeding $1,000 or both.

9

In support of his contention that separate sentences were prohibited under a unit-of prosecution analysis, Potts relies upon *Clark v. State*, 218 Md. App. 230 (2014). In that case, we held that separate sentences were not warranted for possession of a regulated firearm after having been convicted of a disqualifying crime, under PS § 5-133(b), and possession of a regulated firearm by an individual under the age of 21, under PS § 5-133(d), because they were based on the same statute and Clark had violated three different sections of PS § 5-133 by possessing a single regulated firearm. *Clark*, 218 Md. App. at 252-53 (citing *Melton v. State*, 379 Md. 471 (2004) and *Wimbish v. State*, 201 Md. App. 239 (2011) (both concluding that when a defendant possessed a single regulated firearm, he committed only one violation of PS § 5-133)). Potts argues that, as in *Clark*, both of the crimes at issue in the instant case involved possession of the same regulated firearm. As the gun was the single unit of prosecution, he maintains that he could be convicted of only one charge, and his conviction for possession of ammunition under PS § 5-133.1 must be vacated. We disagree.

The specific statutes at issue in the case *sub judice* are not predicated upon possession of the same loaded firearm, but upon possession of a firearm under PS § 5-133(c)(1) and possession of ammunition under PS § 5-133.1. The enactment of PS § 5-133.1 as a separate statutory provision and the plain meaning of the statutory language reveal an intent on the part of the Legislature to punish possession of ammunition separately from a conviction for possession of a firearm under PS § 5-133(c)(1). This is also supported by the legislative history. PS § 5-133.1 was enacted three years ago as part of the Maryland Firearm Safety Act of 2013, for the purpose of "significantly

10

modif[ying] and expand[ing] the regulation of firearms, firearms dealers, and ammunition in the State[.]" S.B. 281 (2013 Sess.), Fiscal & Policy Note at p. 1. That statute provides for a separate sentence under PS § 5-133.1(c). In light of the Legislature's plain intent to make possession of ammunition a separate and distinct offense, a unit-of-prosecution analysis does not apply so as to mandate that Potts's sentence for possession of ammunition be vacated.

Nor do the sentences merge under the required evidence test, the rule of lenity, or principles of fundamental fairness. The required evidence test focuses on the particular elements of each offense. In applying the required evidence test, "'[w]e examine the elements of each offense and determine whether each provision requires proof of a fact which the other does not[.]'" *Paige v. State*, 222 Md. App. 190, 206 (2015) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "'[I]f all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter.'" *Id.* (quoting *State v. Jenkins*, 307 Md. 501, 517 (1986) (citations omitted)). In the case at hand, one crime required proof of a firearm while the other did not. Further, one crime required proof of ammunition, which the other did not. As a result, the convictions for possession of ammunition and possession of a firearm do not merge under the required evidence test.

Nor do they merge under the rule of lenity. The rule of lenity, applicable only where a defendant is convicted of at least one statutory offense, requires merger when there is no indication that the legislature intended multiple punishments for the same act. *Alexis v. State*, 437 Md. 457, 484-85 (2014); *McGrath v. State*, 356 Md. 20, 25 (1999).

11

"[I]f we are unsure of the legislative intent in punishing offenses as a single merged crime or as distinct offenses, we, in effect, give the defendant the benefit of the doubt and hold that the crimes do merge." *Monoker v. State*, 321 Md. 214, 222 (1990) (and cases cited therein). As we have already noted, the Legislature clearly intended to punish the possession of ammunition as a separate statutory offense. Accordingly, merger is not required under the rule of lenity.

Lastly, Potts urges us to examine whether his convictions merge, for sentencing purposes, under principles of fundamental fairness. Although a defendant may attack an illegal sentence by way of direct appeal, the fundamental fairness test does not enjoy the same "procedural dispensation of [Md.] Rule 4-345(a)" that permits correction of an illegal sentence without a contemporaneous objection.[3] *Pair v. State*, 202 Md. App. 617, 649 (2011) (noting that a "non-merged sentence" based on a "fluid test dependent upon a subjective evaluation of the particular evidence in a particular case is not an inherently 'illegal sentence' within the tightly limited contemplation of the rule"). Potts did not make a contemporaneous objection as to the lack of fundamental fairness of his sentences. Accordingly, this issue was not preserved for our consideration.

Even if it had been preserved, we would not be persuaded that merger is required. It was clearly the Legislature's intent to permit multiple sentences for the crimes at issue and the imposition of separate sentences was not fundamentally unfair.

---

[3] Md. Rule 4-345(a) provides that "[t]he court may correct an illegal sentence at any time."

## IV.

Finally, Potts contends that the evidence was insufficient to sustain each of his convictions because there was no evidence that he possessed a firearm. We disagree.

The standard for reviewing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted); *see also Allen v. State*, 402 Md. 59, 71 (2007). The standard of review is the same "regardless of whether the conviction rests upon direct evidence, a mixture of direct and circumstantial, or circumstantial evidence alone." *Smith v. State*, 415 Md. 174, 185 (2010) (citation omitted). We give "due regard to the [fact-finder's] findings of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses." *Harrison v. State*, 382 Md. 477, 487-88 (2004) (and cases cited therein). In performing its function, the jury is free to accept the evidence it believes and reject that which it does not believe. *Muir v. State*, 64 Md. App. 648, 654 (1985).

Potts contends that there was no evidence to show that he exercised some dominion or control over the firearm or the ammunition. He maintains that the evidence presented at trial was "too conflicting for any rational jury to find guilt." In particular, he points to conflicting evidence by the police officers "about when and whether they saw Mr. Potts throw a firearm[,]" and contends that the officers' testimony was "purely speculative."

13

This issue was not preserved for our consideration because Potts did not move for judgment of acquittal either at the close of his case or after the State's rebuttal witness testified. *See Haile v. State*, 431 Md. 448, 464 (2013) (appellate courts are precluded from entertaining review of the sufficiency of the evidence in a criminal case tried by a jury when the defendant failed to move for judgment of acquittal at the close of all the evidence) (relying on *Ennis v. State*, 306 Md. 579, 585 (1986) (holding same)).

Even if the issue had been preserved properly, Potts would fare no better. Any conflict in the evidence went to the weight, and not the sufficiency of the evidence. *Owens v. State*, 170 Md. App. 35, 103 (2006) (and cases cited therein). The testimony at trial established that Sergeant Jenkins and Detective Ward saw Potts with one hand on his midsection, or dip area, and the other swinging freely, which both testified was a characteristic typical of someone carrying a weapon. Sergeant Jenkins saw Potts take a gun from his waistband, turn from the officers, and run away. Detective Ward saw Potts running with a gun in his hand. Later, officers recovered a gun along the path that Potts took as he fled from them. Certainly, the jury was free to decide which testimony to accept and which to reject, and to "believe part of a particular witness's testimony, but disbelieve other parts of that witness's testimony." *Bayne v. State*, 98 Md. App. 149, 155 (1993) (citation omitted). *See also Grimm v. State*, 447 Md. 482, 495 (2016). The jury was also free to infer from the officers' testimony that Potts threw the gun as he ran from

14

the police.  For these reasons, we hold that the evidence was sufficient to support Potts's

convictions.

> **JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.  CASE REMANDED FOR THE SOLE PURPOSE OF CORRECTING THE COMMITMENT RECORD AND DOCKET ENTRIES TO REFLECT THE CORRECT SENTENCE.  COSTS TO BE PAID BY APPELLANT.**